Morrill v. Corbin.

## John F. Morrill
### v.
## Chester C. Corbin.

1. Unlawful confederacy.—A scheme concerted between A and B, by which A is to keep up B's credit (who is in failing pecuniary circumstances) so as to enable him to buy goods upon credit of innocent parties, by A paying all such expenses as are indispensable to that end, and the goods so bought, upon their arrival in Chicago, are to be taken of B by A at seventy-five cents on the dollar, and actual y or colorably employed in the satisfaction of B's indebtedness to A, A and B well knowing that such innocent third parties will never be paid for these goods, amounts to an unlawful confederacy, and in such case it is immaterial whether B made any false representations to the third parties or not.

2. Vendor and vendee.—If a vendee purchase goods with the preconceived design of not paying for them, the purchase is fraudulent, and the vendor may treat the sale as a nullity and maintain trover or replevin for the goods against the vendee, or one acting in privity with him in the purchase, or any other party not a *bona fide* purchaser, mortgagee or pledgee, for a valuable consideration.

3. Evidence of fraudulent intention.—While a re-sale of the goods by the vendee at reduced prices immediately after they get into his possession will afford evidence of such fraudulent intention, where the arrangement to so dispose of the goods is made in advance of the purchase, the evidence of fraud is still stronger.

4. Insolvency of vendee.—The mere insolvency of the purchaser and his inability to pay for the goods *when purchased*, even though well known to himself, will not avoid the sale, if no false statements or tricks are employed to obtain the goods.

5. Instructions.—Where the evidence is conflicting upon material facts, the instructions should be clear and intelligible, state the law accurately and not assume any material controverted fact. As the instruction given under the second theory of this case submitted to the jury no facts which would warrant a finding that the purchase was fraudulent as between plaintiff and B, disconnected from A, to connect A with the purchase, the instruction should have submitted it to the jury to find that A fraudulently *procured* the sale to be made by the plaintiff to B.

Appeal from the Superior Court of Cook county; the Hon. Rollin S. Williamson, Judge, presiding. Opinion filed June 27, 1883.

Messrs. Merriam & Whipple and Mr. Thomas Cratty, for

appellant; that plaintiff must prove that defendant bought the goods without paying for them or with knowledge of the fraud practiced by the intermediate party before he can recover in this action, cited Butters v. Haughwout, 42 Ill. 18; Kranert v. Simon, 65 Ill. 344; Brundage v. Camp, 21 Ill. 337; Chicago Dock Co. v. Foster, 48 Ill. 507; M. C. R. R. Co. v. Phillips, 60 Ill. 190–197; Ins. Co. v. Cochran, 27 Ala. 235; Benjamin on Sales, § 433, note I; Addison on Contracts, § 641; Owens v. Weedman, 82 Ill. 417; Bresley v. Powers, 82 Ill. 125.

As to the right to rescind a contract of sale: Emanuel v. Dune, 3 Camp. 300; Bowen v. Wells, Cowper, 818; Cross v. Peters, 1 Greenl. (Me.) 376; Henshaw v. Bryant, 4 Scam. 97; Nichols v. Pinner, 18 N. Y. 300; Smith v. Smith, 21 Penn. St. 367–371; Noble v. Adams, 7 Taunton, 61.

The *allegata* must exist before the court can consider the *probata:* McKay v. Bissett, 5 Gilm. 504; T. W. & W. R. R. Co. v. Beggs, 85 Ill. 80; C. C. & I. C. R. R. Co. v. Troesch, 63 Ill. 545; C. & A. R. R. Co. v. Mock, 72 Ill. 141; Sturges v. Keith, 57 Ill. 458.

As to the admission of books of account as evidence: Barnes v. Simmons, 27 Ill. 511; Bradley v. Goodyear, 1 Day, 106; Swing v. Sparks, 2 Halst. 59-61; Fry v. Slyfield, 3 Vt. 249; Junietta Bk. v. Brown, 5 S. & R. 225-231; 1 Greenleaf on Ev. 143, § 119; Cooper v Morrill, 4 Yeates, 341; Ruggles v. Gatton, 50 Ill. 412; Patrick v. Jack, 82 Ill. 81; Middleton v. Milton, 10 B. & C. 317; Higham v. Ridgway, 10 East, 109.

An election to affirm a sale, once made, can not be retracted: Gray v. St. John, 35 Ill. 222-240; Whitcomb v. Denio, 52 Vt. 382-388; Hawes v. Parkman, 20 Pick. 90; Ins. Co. v. Cochran, 27 Ala. 237; 1 Chitty on Contracts, § 433.

Where a party repudiates a sale and brings an action of trover for the goods, he has no right to anything which he may have received from the purchaser on account of the transaction: Besley v. Dumas, 6 Bradwell, 291; Livington v. Short, 77 Ill. 581; Bowen v. Schuyler, 41 Ill. 192; Ryan v. Brant, 42 Ill. 78; King v. Mason, 42 Ill. 223; Kellogg v. Turpie, 93 Ill. 265; Benjamin on Sales, 342.

Morrill v. Corbin.

Mr. WM. J. MANNING, for appellee; as to fraud in the purchase of goods, cited Cooley on Torts, 451, 452, 478, 479, 503; Hardman v. Booth, 1 Hurlstone & M. 802; Wright v. Brown, 67 N. Y. 1; Nichols v. Michael, 23 N. Y. 264; Hennequin v. Naylor, 24 N. Y. 139; Donaldson v. Farwell, 3 Otto, 631; Stewart v. Emerson, 52 N. H. 201; Benjamin on Sales, 440; Load v. Green, 15 M. & W. 216; Mulliken v. Millar, 12 R. I. 297; Ferguson v. Carrington, 9 B. & C. 59; Kitchen v. Bedford, 13 Wallace, 413; Moore v. Eldred, 42 Vt. 13; Gray v. St. John, 35 Ill. 222; Am. M. U. Ex. Co. v. Willsie, 79 Ill. 94; Howitt v. Estelle, 2 Bradwell, 67; Kellogg v. Turpie, 2 Bradwell, 67; Story on Sales, § 446; Addison on Torts, §§ 496, 517, 526, 537; Allen v. Hartfield, 76 Ill. 358; German Nat. Bank v. Meadowcraft, 95 Ill. 124; Fiedler v. Maxwell, 2 Blatch. 552; Stephens v. Elwell, 4 M. & Sel. 259; Gage v. Whittier, 17 N. H. 312; Abbotts v. Barry, 6 E. C. L. 186; Bowes v. Foster, 2 H. & M. 779.

McAllister, J.  This action was trover, brought by appellee Corbin against appellant Morrill to recover the value of a quantity of boots and shoes which had been purchased of plaintiff, who was a manufacturer of such goods in Webster, Massachusetts, by one C. E. Raddin, who was apparently a wholesale dealer in the same kind of goods at the time of such purchase in the city of Chicago; the goods having been obtained by Raddin in different quantities and from time to time between Dec. 30, 1880, and March 18, 1881, it was claimed that the several purchases were fraudulently made by Raddin, with the knowledge, privity and concurrence of Morrill who received the goods of Raddin upon their arrival in Chicago, and appropriated them to his own use. Judgment having passed against Morrill for $1,206, he brings the case here by appeal.

The evidence for plaintiff tended to prove that just prior to the purchase of the first of the goods in question, Raddin was greatly embarrassed and in failing pecuniary circumstances; that he and Morrill had, for several months, been occupying the same store, under quite intimate, though somewhat peculiar

relations; and Morrill, claiming that Raddin was largely indebted to him, at that time, they concerted and acted upon a scheme which in substance and effect, so far as the question of fraud in the purchase of the goods in question is concerned, was, that Morrill was to keep up Raddin's credit, so as to enable him to buy goods upon credit of innocent parties, by paying all such expenses as were indispensable to that end, and Raddin was to buy goods upon credit of Eastern manufacturers, which goods were to be taken of Raddin by Morrill upon their arrival in Chicago, at seventy-five cents upon the dollar and actually or colorably employed in the satisfaction and discharge of Raddin's indebtedness to Morrill. The evidence tends to show, that the goods in question in this suit were purchased by Raddin, and appropriated by Morrill, in pursuance of that scheme, and such scheme so concerted between these two parties, for such purpose, that is, to obtain the property of innocent third parties they, Morrill and Raddin, well knowing that such innocent parties would never be paid for their goods, amounted to an unlawful confederacy, a conspiracy, so that the goods thereby obtained from the plaintiff were obtained not only fraudulently, but by means that were criminal in their nature, and it is in such case immaterial whether Raddin made any false representations to the plaintiff or not. Cross v. Peters, 1 Greenleaf R. 388.

So far as the question of fraud is concerned, the principles applied by the court in Martin v. Pewtress, 4 Burrows, 2477, are applicable to this case, though the facts there were, in some aspects, different. Under the facts which the plaintiff's evidence tended to prove he had the right to treat the contract of sale as a nullity and maintain trover against Morrill as for a wrongful conversion of his goods.

It is the well-settled rule of law, that if the vendee purchase the goods with the preconceived design of not paying for them, the purchase is fraudulent, and the vendor may treat the sale as a nullity, and maintain trover or replevin for the goods against the vendee, or one acting in privity with him in the purchase, or any other party not a *bona fide* purchaser, mortgagee or pledgee for a valuable consideration. Cary v.

Hotailing, 1 Hill, 311, and cases there cited; Bigelow v. Heaton, 6 Hill, 44.

It has been held that a re-sale of the goods by the vendee, at reduced prices, immediately after they get into his possession, will afford evidence of such fraudulent intention. Earl of Bristol v. Wilsmore, 1 B. & C. 574; Stevenson v. Hart, 4 Bing. 476; Ferguson v. Carrington, 9 B. & C. 59.

Such a rule would, when applied under certain circumstances, commend itself to our judgment. But it is a much stronger case for its application, it seems to us, if the arrangement to so dispose of the goods is made in advance of their purchase.

If the evidence had not been conflicting as to any of the essential facts, we might not find much difficulty in affirming the judgment notwithstanding errors we find in the instructions for plaintiff. Raddin had died, but Morrill was a witness in his own behalf, and his testimony produces a conflict as to many of the material facts. That being so, by the established rules of our Supreme Court, it was essential that the instructions of the court for the plaintiff should be clear and intelligible, in no substantial degree misleading to the prejudice of the defendant, that they should state the law accurately and that they should not assume any material, controverted fact. The case was not tried upon the theory above indicated, but upon that of false representations made by Raddin to plaintiff, and that defendant had knowledge of them, and one other theory which we do not quite understand. Under the first theory, the court gave for plaintiff this instruction: "The jury are instructed as a matter of law, that if you believe from the evidence, that the plaintiff was induced by false and fraudulent misrepresentations of C. E. Raddin, as to his pecuniary responsibility, *known to be such by him*, to sell and deliver the goods in controversy in this suit to said Raddin, and, if you believe from the evidence, that defendant received and converted said goods to his own use, with the knowledge of such false and fraudulent representations of Raddin to the plaintiff, if such there were, then the plaintiff is entitled to recover from the defendant the value of said goods, at the time of their conversion by him."

The evidence tended to show but one representation made by Raddin to plaintiff, and that was in August, 1880, when the plaintiff testified, that Raddin told him that he was worth from twenty to twenty-five thousand dollars. The defendant by his evidence controverted the falsity of that statement, at the time it was made, and especially the fact that Raddin knew or had good reason to believe it was false. By the instruction, it is assumed that Raddin knew that the representation was false.

Under the other theory, the court gave to the jury this instruction: "The jury are further instructed as matter of law, that if you believe from the evidence, that the defendant, knowing of, or having good reason to know by facts and circumstances, known to him, of the insolvency of C. E. Raddin, if such was the fact, aided, or in any way or manner, assisted said Raddin to buy goods of the plaintiff on credit, fraudulently intending, at the time of such purchase, to take advantage of said Raddin's insolvency, if such was the fact, and not pay for such goods, then the concealment of such intention, if such was the fact, is a gross fraud, and the title to the goods, if any so obtained did not pass, and if the defendant, with such knowledge took possession of said goods, if any so obtained, and converted them to his own use, and if you further believe from the evidence that the said goods, if any so obtained, are the goods for the value of which this suit is brought, and that said goods are mentioned and described in the declaration filed in this cause, then the defendant is liable to the plaintiff for their value, at the time of such conversion."

It will be observed that the above contains no hypothesis to the effect, that Raddin purchased with the preconceived design of not paying for the goods, or that he made any false representations or resorted to any trick or artifice to obtain them, or even that he knew he was insolvent; or that he was acting in pursuance of a concerted scheme between him and Morrill, to cheat the plaintiff or other innocent parties out of their goods.

The mere fact of the insolvency of the vendee at the time of a purchase of goods, does not confer upon the vendor the

right to avoid the sale, especially after possession given to the vendee. Cross v. Peters, *supra.* " But the mere insolvency of the purchaser and his inability to pay for the goods *when purchased*, even though well known to himself, will not avoid the sale, if no false statements or tricks are employed to obtain the goods." Chit. on Con. 10th Am. ed. 430.

It is clear that the instruction submitted to the jury no facts which would warrant a finding that the purchase was fraudulent as between the plaintiff and Raddin, disconnected from Morrill. Now, what was submitted to connect the latter with the purchase? Nothing but the indefinite hypothesis that he " aided or, in any way or manner, assisted said Raddin to buy goods of the plaintiff on credit." If Raddin was about to obtain the goods by fraud, and Morrill, knowing it, aided or assisted him in the commission of such fraud, that would make him a party to it. But Raddin being innocent in the premises, under the facts submitted, the instruction should have submitted it to the jury to find that Morrill fraudulently *procured* the sale to be made by the plaintiff to Raddin. Without that element, the case of Hill v. Perrott, 3 Taunt. 274, does not apply.

The judgment of the court below will be reversed and the cause remanded.

Judgment reversed.