## Christian Hacker, John Walz, John O. Barrett, William G. Wilcox and Fred C. Wilcox v. R. Munroe & Son.

1. FRAUDULENT SALES—*Purchases on Credit Not Fraudulent Because the Buyer is Insolvent.*—There is no law requiring a person when purchasing goods to give notice of his inability to pay for them, on penalty of having the sale held voidable for a failure to do so. A purchase on credit is not fraudulent merely because the buyer is embarrassed and unable to pay.

2. REPLEVIN—*Does Not Lie for Fixtures.*—Replevin does not lie for the recovery of things annexed to real estate so as to become a part of it, as fixtures.

3. SAME—*Burden of Proof.*--In a replevin suit where the right of property is in issue the burden of proof is upon the plaintiff to show his right to the possession of the property, or fail in his action; he must recover, if at all, upon the strength of it, and if he has parted with his ownership for the obligation of another without fraud, it is a matter of no concern that the defendants in the suit paid nothing for the property.

4. FIXTURES—*Character of Property Not Changed, When.*—The fact that before commencing a suit in replevin for certain articles of personal property, the plaintiff filed a claim for a mechanic's lien on the real estate upon which the articles (claimed to be fixtures) were situated, which was not followed up by a suit to enforce it, does not change the character of the property or affect the right to maintain the action of replevin.

**Memorandum.**—Replevin. In the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. The pleadings are stated in the opinion of the court; trial by jury; verdict and judgment for plaintiffs; appeal by defendants. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed December 13, 1894.

APPELLANTS' BRIEF, HILL, HAVEN & HILL AND GEO. S. HOUSE, ATTORNEYS FOR APPELLANTS.

If a buyer purchase goods with the preconceived design not to pay for them, or with the intention at the time of such purchase never to pay for them, the purchase is fraudulent, but there must be a positive and predetermined intention entertained and acted upon by the buyer at the time of such purchase never to pay for the goods. 1 Benj. on Sales (6th Am. Ed.), Secs. 655, 656, note 18; Farwell v. Hanchett, 120 Ill. 573; Henshaw v. Bryant, 4 Scam. 97; Catlin v. Warren, 16 Brad. 418; Lewis v. Reticker, 27 Ill. App. 601; Armstrong v. Lewis, 38 Ill. App. 164.

In order to set aside a sale of goods for fraud in the purchaser, such a case must be made out as would authorize a jury to convict the purchaser of obtaining the goods under false pretenses. In such a case the *quo animo* with which purchases are made, whether the purchaser expected or intended to pay for the goods when he purchased them, or intended to cheat the seller out of them, is the very gist of the fraud. Henshaw v. Bryant, 4 Scam. 97.

A mortgagee or pledgee of personal property from the fraudulent vendee thereof without notice, and even a purchaser from such buyer, in consideration of a pre-existing debt, and others in like situation, are regarded as *bona fide* purchasers and protected as such. Butters v. Haughwout, 42 Ill. 18; M. C. R. R. Co. v. Phillips, 60 Ill. 190; Kranert v. Simmon, 65 Ill. 34.

It is not necessary that a chattel should be physically attached to the real estate to become a part thereof. Rails belonging to a fence or hauled onto the premises with the intention of erecting a fence, or timber for a building, although not erected, but lying loose around the land, boilers, engines, presses and paper cutters of a printing office, and rails, ties, chains and spikes brought upon the ground of a railroad company and designed to be attached, but in no wise attached thereto, constitute a part of the real estate. Palmer v. Forbes, 23 Ill. 304; McLaughlin v. Johnson, 46 Ill. 163; Arnold v. Crowder, 81 Ill. 56; Jenny v. Jackson, 6 Brad. 32; Oatis v. May, 30 Ill. App. 581; Calumet I. & S. Co. v. Lathrop, 36 Ill. 249.

The clear tendency of modern authority is to give preeminence to the question of intention, but it is to be noted that the intention is to be sought, not in the undisclosed or secret purpose of the actor, but as manifested in his acts considered in connection with the surrounding circumstances. Calumet I. & S. Co. v. Lathrop, 36 Ill. 249; Fifield v. Farmers National Bank, 47 Ill. App. 118; 35 N. E. R. 803; Arnold v. Crowder, 81 Ill. 56; Sword v. Law, 122 Ill. 496.

APPELLEES' BRIEF, J. W. D'ARCY AND E. MEERS, ATTORNEYS.

Misrepresentations knowingly made are sufficient to warrant an inference of fraudulent intent. Staver & Abbott Mfg. Co. v. Coe, 49 Ill. App. 426; Wachsmuth v. Martine, 45 Ill. App. 244.

If the party, at the time of making the fraudulent representations, has everybody in mind to whom the representations may come, that includes the particular person to whom the representations do in fact come. And the person defrauded is as much within the scope of the fraudulent party's intent as if the representations were made to him direct. Commonwealth v. Call, 21 Pick. (Mass.) 515; Genessee Co. Savings Bank v. Michigan Barge Co., 52 Mich. 164; Wells v. Cook, 88 Am. Dec. 442.

All erections made for the purpose of trade during the

Hacker v. Munroe & Son.

tenancy, such as soap vats, fire engines to work a colliery, pans used in manufacturing salt, brew-houses, furnaces and coppers, green-houses, hot-houses erected by nurserymen and gardners, may be moved by the tenant.    Potts Case, Salk., 368;  Lawton v. Lawton, 3 Atk. 13;  Lord Dudley v. Lord Warde, Ambler, 113;  Lawton's Exrs. v. Salmon, 1 H. Blk. 259 and notes; Miller v. Plumb, 6 Cowan 665; White v. Arnt, 1 Wharton 91;  Guffield v. Hapgood, 17 Pick. (Mass.) 301;  Van Ness v. Packard, 2 Pet. (U. S.) 413.

If a debtor use his personal property upon the real estate of another, with the knowledge and consent of the owner, so that it becomes a part of such realty, for the purpose of defrauding his creditors, and prevent them from obtaining satisfaction of their demands, they may still follow the property into the hands of the owner of the premises thus benefited and fasten their claims upon such premises to the extent of the debtor's property thus appropriated.    Bump on Fraudulent Conveyances, 239, note 1; Lyman v. McGregor, 38 Allen (Mass.) 182;  Deitz v. Atwood, 19 Ill. App. 96.

To determine the immovable character of a fixture, these tests are, by the modern authorities, applied, viz.:   First, actual annexation to the realty or something appurtenant thereto; second, application to the use or purpose to which that part of the realty with which it is connected is appropriated, and third, the intention of the parties making the annexation to make a permanent accession to the freehold. Herman on Chattel Mortgages, 6; Ewell on Fixtures, 21, 22; Tyler on Fixtures, 114; Washburn on Real Property, 16. Washburn (page 8) lays down the rule:   "It may be stated in the first place, that whether a thing which may become a fixture becomes a part of the real estate by annexing it, depends as a general proposition upon the intention with which it was done."    In Kelly v. Austin, 46 Ill. 156, this court said: "While the intention alone will not always determine whether such structures as were then being considered are or are not to be considered as realty, it will have a controlling influence in cases of doubt."    Dooley v. Christ, 25 Ill. 551; Smith v. Moore, 26 Ill. 392; Arnold v. Crowder, 81 Ill. 56; Thielman v. Carr et al., 75 Ill. 385.

MR. JUSTICE CARTWRIGHT DELIVERED THE OPINION OF THE COURT.

This is a suit in replevin begun by appellees against appellants for the possession of three boilers and the plates, smoke stacks, valves and attachments belonging thereto. The pleas were *non cepit*, *non detinet*, property in defendants, and that the boilers, etc., were fixtures belonging to real estate and buildings owned by defendants designed for a tin plate mill and plant, and therefore not the subject of replevin. To the plea of property in defendants the plaintiffs replied that the property replevied was the property of plaintiffs and not of defendants, and by replication denied that the property replevied was fixtures. A count in trover was filed by leave of court for articles not found under the writ, and to that count a plea of not guilty was interposed. There was a trial and the verdict was for plaintiffs as to all the property except the plates, bolts, rods, nuts and irons physically attached to the real estate, and for defendants as to the parts so physically attached, and defendants were found guilty as to the articles described in the count in trover, and plaintiffs' damages under that count were assessed at $80. The court required a remittitur of $44 from the damages in trover and entered judgment in accordance with the verdict except as to the amount of damages, the judgment being for $36 damages as reduced by the remittitur.

In order to make the requisite proof of title in themselves the plaintiffs introduced evidence that they made the boilers and attachments at their factory in Pennsylvania, and sold and delivered them to the Lewis Steel, Sheet and Tin Plate Company, about fourteen months before commencement of this suit. By the contract the boilers and fixtures were to be delivered on board the cars at Pittsburg, Pa., on October 20, 1891, and they were so delivered October 26, 1891, and shipped to said Lewis Steel, Sheet & Tin Plate Company, a corporation at Joliet, Illinois. Plaintiffs claimed that the sale was voidable at their election because of fraudulent representations on the part of the purchaser showing fraudulent intent, and that they exercised their right to avoid

the sale and reclaim the possession by serving a notice on the corporation August 19, 1892, about ten months after the sale; that they thereby rescinded said sale for such cause, and demanded an immediate return of the property. The only representation of any kind on behalf of the Tin Plate Company proved, was made by J. Davis Lewis, who was then president of the corporation, to one of plaintiffs' firm. Plaintiffs had made a written proposition to the corporation to furnish the boilers and fixtures, and on August 20, 1891, at the office of Lewis Brothers, in Pittsburg, Pa., the proposition was accepted by said president. Robert Munroe, one of the firm who received the acceptance, then stated that there was nothing in the contract about payments, and J. Davis Lewis, the president, then said that they had more than $25,000 in the bank at Joliet, but they were paying for their other machinery, and it was more than likely they would be a little short when they came to start up, and would need some money to operate the plant, and that if satisfactory they would pay part cash and the balance in four months. It was then agreed that the terms should be $1,261 cash on shipment and a note for $1,700 on four months time. It was something over two months after that time that the boilers were completed and shipped, and before shipment plaintiffs obtained a report of the financial standing of the corporation from the Bradstreet Company, but that report was not admitted in evidence and could have no influence in the case. The Tin Plate Company was not in any way responsible for its statements.

The court overruled, for the time being, objections to the statement of the amount of paid up capital, amounts of stock issued and stock in treasury made to the Bradstreet Co., July 1, 1891, and to what was said to an agent of that company the last of September or first of October, 1891, as to the amount of their cash and other property, upon the promise of counsel to show that such information was communicated to plaintiffs. No evidence of the promised kind was offered, and the court afterward ruled that the evidence might stand merely as evidence tending to prove their finan-

cial condition, and instructed the jury to disregard both the written statement and what was said to the agent in considering the question of fraudulent representations and of fraud in making the contract. As evidence, for the purpose for which they were allowed to stand, they tended to overthrow plaintiffs' claim. The claim that fraudulent representations were made was thereby left with no proof of any representation, except that in August, 1891, the corporation had over $25,000 in bank in Joliet, and yet the argument for appellees in this court that the verdict was right, is based largely upon the reliance of plaintiffs upon the excluded report from the Bradstreet Co., and the claim that the statements to that agency and Bradstreet's agent were untrue. Manifestly, argument founded on excluded evidence can have no weight, and what plaintiffs learned from the Bradstreet agency was excluded as already pointed out. If the corporation did not have $25,000 in bank in Joliet at the time stated, that fact could have been easily proved, but no evidence of that sort was offered. Its bills were not being promptly paid at that time, but it was engaged in a great enterprise involving large expenditures. It built a very large iron mill, put in railroad tracks, dug an artesian well and put in foundations for engines, etc. What was said did not purport to be a statement of net worth, and was coupled with the statement that they would probably be short of funds. The evidence fell far short of proving false and fraudulent representations. Nor do we find any evidence of an intent on the part of the purchaser in buying the property not to pay for it. Afterward, when there was a proposition, to which the former as well as present owners were parties, to have a Welshman named Jenkins take the plant, he was to pay certain enumerated debts, among which was the debt to plaintiffs.

When the boilers were received the last of October, the corporation was out of funds and unable to pay the freight, but the delivery was made without the cash payment, and no action of any kind was taken by plaintiffs for several months afterward. There is no rule of law that required the corporation to give notice of its inability to pay, on

penalty of having the sale held voidable for a failure to do so, and a purchase on credit is not fraudulent merely because the buyer is embarrassed and unable to pay. Henshaw v. Bryant, 4 Scam. 97; Blow v. Gage, 44 Ill. 208; Kitson v. Farwell, 132 Ill. 327; Morrill v. Corbin, 13 Ill. App. 81.

The tin plate mill and plant was being built in pursuance of a contract between the Lewis Brothers, consisting of D. Trevor Lewis, J. Davis Lewis and Nathaniel D. Lewis, who had recently come from Wales and desired to start such an enterprise, and a syndicate at Joliet interested in a tract of land of about 100 acres, by which the Lewis Brothers were to bring to Joliet a corporation with a capital stock of $500,000, and erect on that tract mills for the manufacture of tin plate, etc., and were to employ two hundred persons, with a pay roll of not less than $600 per day, and the syndicate were to deed a block of land for a site, and pay a bonus of $20,000 as the construction of the mills progressed. When the boilers and attachments arrived Thomas M. Creevy, one of the syndicate, paid the freight, and they were unloaded and placed over foundations where they were intended to be finally located. The defendants proved title to the tract of land through a contract of purchase with James C. Zarley, the owner, one of the syndicate, antedating the contract with Lewis Brothers, and enforced by a decree for specific performance, and also by quit-claim deed from Mary Lewis and her husband, J. D. Lewis, one of the Lewis Brothers, of the site of the plant and other parts of the tract conveyed to said Mary Lewis in pursuance of arrangements with the syndicate. Defendants took possession of all the property at the date of the deed from Mary Lewis and husband September 24, 1892, and remained in possession until December 21, 1892, when plaintiffs demanded possession of the property replevied and began this suit. Defendants claimed that the property replevied was part of the real estate as fixtures, and the verdict and judgment gave them such parts as were physically attached to the real estate and foundations, and gave plaintiffs all that were not so attached.

In March, 1892,.the plaintiffs filed a claim for a lien upon the real estate on which the boilers were located, treating them as part of the real estate, and on the day previous to the commencement of this suit they filed a release of that claim. After the defendants got possession they proceeded toward the completion of the plant as a tin plate mill, but after two or three months abandoned all preparations on account, as they say, of a change in the national administration. The foundations for the boilers were near the large mill, and after the boilers were located a building was put up over them to protect them. They were supported by blocks and were never lowered to their permanent resting places. Considering all the evidence as to the situation of the property and affecting the question of intention, we would not be disposed to interfere with the finding of the jury that those things not annexed to the real estate had not become a part of it. Nor do we think that the filing of the claim for lien, which was not followed by any suit to enforce it, changed the character of the property.

When the defendants contracted for the land there was no tin plate mill on it, and there was no intention to build one. They paid the contract price but nothing additional for the mill or any of the property replevied which they obtained when they took possession, and it is said that there is no equity in their claim. If it was permissible upon that ground, doubtless it would seem more equitable that plaintiffs should take this property from defendants, who paid nothing for it, and thereby save themselves from the loss resulting from giving credit, than that the defendants should have it, but that can be said in every case where a purchaser fails to pay for property. The burden of proof was on plaintiffs to show their title and right of possession or fail in their action. They must recover, if at all, on the strength of their own title, and if they had parted with their ownership for the obligation of the Tin Plate Co. without fraud, it was a matter of no concern in this suit that the defendants paid nothing for the boilers. Anderson v. Talcott, 1 Gilman 365; Chandler v. Lincoln, 52 Ill. 74; Constantine v. Foster, 57 Ill. 36; Reynolds v. McCormick, 62 Ill. 412.

Hacker v. Munroe & Son.

It is a misfortune that plaintiffs were unable to collect from the Tin Plate Co., but such losses can not be retrieved by declaring the sale void and getting the property back, unless legal ground for doing so can be shown.   The notice of plaintiffs that they rescinded the sale was served on J. D. Lewis, August 19, 1892, and he signed an acknowledgment of the service as late president of the company.   Plaintiffs were permitted to prove by a witness that he saw J. D. Lewis about a week before the trial of this case, and Lewis said that plaintiffs' attorney served notice on him, and he relinquished any claim he had on the boilers to the attorney.   J. D. Lewis had once been president of the Tin Plate Co., but so far as appears, he was not at the time the notice was served, as he acknowledged the service as late president, nor at the time of the statement to the witness.   There is no evidence that he did or said anything in the way of relinquishment when the notice was served, or that he had any authority to do so. The evidence was improperly admitted.

We think the evidence insufficient to sustain the charges of fraud in the purchase of the property which would render the sale voidable, and the judgment will, therefore, be reversed and the cause remanded.

Mr. Presiding Justice Lacey dissents.

I can not concur with the reversal of the judgment in this case.   It seems to me wholly inequitable to do so.   The boilers were not the property of the appellants, and the only claim they had in them was a naked possession.   The appellee had shipped them to the Tin Plate Company on the representations of its agent they would be paid for and that the company was able to do so.   When the boilers arrived at Joliet the Tin Plate Company was so utterly insolvent that it could not pay the freight on them.   I think, under the evidence and circumstances, the jury were justified in their verdict and in believing that the boilers were purchased with a fraudulent intent or in so reckless a manner as to ability to pay for them, the jury might infer fraudulent intent at the time of purchase, not to pay for them.