KELSEY, ROBERSON & CO. v. THOMAS HARRISON.

DEBT, *Not Fraudulently Contracted.* Where a merchant is insolvent, and has been, to use his own words, "going down for several years," and of this fact he fails to advise the vendors at the time of his purchases, and continues to buy on credit to keep his usual and ordinary stock, his omission to disclose his actual condition to his vendors is not a fraud for which the sales may be voided, or such bad faith as constitutes in law a fraudulent contracting of the debt, if he did not purchase with the preconceived design not to pay therefor.

*Error from Montgomery District Court.*

ACTION by *Kelsey* and two others, partners as *Kelsey, Roberson & Co.,* against *Harrison,* to recover upon a certain promissory note. At the beginning of the action, the plaintiffs obtained an order of attachment, which was levied upon the property of the defendant. At the September Term, 1882, the court sustained defendant's motion for a dissolution of the attachment, and made an order accordingly; which ruling and order the plaintiffs bring here for review. The opinion states the facts.

*W. T. O'Connor,* for plaintiffs in error.

*Wm. Dunkin,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: On the 1st day of August, 1882, the plaintiffs commenced their action against the defendant to recover upon a certain promissory note, executed the 28th day of July, 1882, by the latter to the former, for the sum of $737.37, and bearing interest from date at the rate of ten per cent. per annum. At the commencement of the action, the plaintiffs obtained an attachment against the property of the defendant, and levied thereon. The affidavit for attachment contains three grounds, viz.:

(1) "That the defendant is about to convert his property into money for the purpose of placing it beyond the reach of his creditors; (2) that the defendant has assigned and disposed of his property with the intent to hinder, delay and defraud his creditors; (3) that the defendant fraudulently contracted the debt for which suit is about to be brought."

On the 12th of August, 1882, the defendant filed his motion asking a dissolution of the attachment, and the discharge of the property taken thereunder, and in such motion denied the truthfulness of the attachment affidavit. Upon the hearing at the September term of the court for 1882, several affidavits were read and considered; the court sustained the motion, and ordered the attachment discharged and set aside. The order and ruling of the court are complained of.

It is insisted that the affidavits proved that the defendant had disposed of his property to delay, hinder and defraud his creditors, and that the debt sued upon was fraudulently contracted. It appears that on the 15th day of July, 1882, the defendant executed to Edgar Hull a chattel mortgage to secure $535.50; but this mortgage was executed to secure an actual indebtedness, and at the time of the attachment the sum of $314.39 had been paid thereon. The evidence concerning this mortgage in no way proves or tends to prove that the defendant had any idea or intention at its execution

to hinder, delay or defraud his creditors. He had the undoubted right to prefer Hull, and to secure him upon his stock of goods. (*Randall v. Shaw,* 28 Kas. 419.) And the fact that after the execution of the mortgage he paid thereon $315, or nearly $25 per day, goes very far to show that this mortgage was not given as a blanket to cover up or secrete his property, or to dispose of it to hinder, delay or defraud his creditors. Further than this, it appears from the evidence of one witness that after this mortgage had been given, the employés of defendant were instructed by him to sell only for cash, and keep the proceeds of such sales separate, and that this was done until the attachment was levied. Notwithstanding the conflicting evidence, defendant's testimony that he applied the proceeds of the sale of his goods toward this mortgage, and that his family and other expenses, from the time of the giving of this mortgage till the attachment, were paid from money collected on outstanding accounts, seems to be borne out by the actual facts.

Concerning the claim that the debt sued upon was fraudulently contracted, it is contended that at the time defendant contracted the debt with plaintiffs he was insolvent, and that as he concealed such fact from the sellers, it was, considering the other circumstances in proof, such a measure of bad faith as constituted a fraudulent contracting of the debt within the meaning of the attachment law. The facts do not in any way show that the debt was fraudulently contracted. There is nothing in the evidence that he made his purchases at other than the usual times, and in the regular course of his business. No false or other improper representations were made by him at the time of his purchases to the plaintiffs or other parties in regard to his condition tending to mislead and induce them to give him credit which they would otherwise have withheld. It is true that some of the evidence tends to show that for some time he had been running behind; to use his own words, "going down for several years;" that his trade was falling off, and his business drifting rapidly in a bad condition; but there is no evidence showing intentional conceal-

10—29 KAS.

ment at the time of his purchases, or any intention at such time to cheat his creditors; nor·can we say there was at that time any actual intention on his part to do any act, the necessary result of which was to cheat and defraud plaintiffs or others.    As was said in *Nichols v. Pinner*, 18 N. Y. 299: "But it is clear that such intention [to cheat and defraud another] is not necessarily inferable from the fact that a man in good credit, going on with his regular business matters as usual, purchases for the purpose of continuing that business, after he is made aware that his property is not sufficient to pay his debts.    It is not fraudulent in him to use reasonable efforts· to retrieve his fortune and to extricate himself from his embarrassment.    It is not unnatural that he should cling to the hope that better times would come; that to-morrow will be as this day, and much more abundant; and that with this hope, however delusive results may have shown it to be, 'he should have been impelled to buy more goods, contract new debts, and struggle on until he find himself in hopeless bankruptcy.    This is an every-day experience, in the commercial world, and it would be hard indeed if the unfortunate victim of hopes that looked to him at the time as reasonable, must, in his misfortunes, be judged by the actual instead of the possible results.    The authorities do not sustain any such harsh doctrine, but the reverse."

Now, to sustain the claim of plaintiffs upon the ground of fraud, the affidavits must have established that defendant made the purchases of plaintiffs with the preconceived design not to pay, or what is the same, that he intended to commit a fraud at the time he made his purchases of the plaintiffs, which were not paid for at the commencement of this action, and that he deliberately proceeded to consummate such fraud. This is not shown.    The most that can be alleged, and which was proved upon this point, is that defendant at the time of making his purchases was going down, and had been for years, and that of this fact he failed to advise the vendors at the time.

The order and judgment of the district court must be sustained.

All the Justices concurring.