LOUIS H. AYERS & others *vs.* CHARLES R. FARWELL & another.

Worcester.    October 1, 1907. — October 15, 1907.

Present: KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Replevin. Bankruptcy. Sale. Fraud.*

After an adjudication of bankruptcy under the bankruptcy act of 1898 and before a trustee has been appointed or anything else has been done to obtain possession of the bankrupt's property, the owner of property which is in the possession of the bankrupt can maintain an action of replevin in a State court to obtain possession of it.

A vendor cannot regain in an action of replevin merchandise delivered by him to the defendant from five to eight months after it was ordered by the defendant in the ordinary course of his business if the evidence shows only that the defendant

was insolvent when the merchandise was delivered, but does not show that he was insolvent when it was ordered, or that, at the time of delivery, he had given up the hope and expectation of continuing in business and ultimately paying all his debts.

REPLEVIN for horse blankets and carriage robes which the plaintiffs contend that the defendants ordered and received with a preconceived intention not to pay for them. Writ in the Superior Court for the county of Worcester dated October 4, 1906.

At the trial, which was before *Wait*, J., a verdict was directed for the defendants, and the plaintiff excepted.

*C. F. Baker*, for the plaintiffs.

*G. H. Wyman*, for the defendants.

KNOWLTON, C. J. This writ of replevin was brought to recover property in the possession of a bankrupt firm, five days after an adjudication of bankruptcy against it, but before the appointment of a trustee, and before anything had been done to obtain actual possession of the property for the benefit of the creditors. The case is before us on two bills of exceptions, the first filed by the defendant to set aside a ruling that the writ was properly issued, and the second filed by the plaintiff on his objection and exception to the ruling that, upon all the evidence, the plaintiff was not entitled to recover.

The first question is whether, after an adjudication in bankruptcy and before anything else has been done to obtain possession of the bankrupt's property, a plaintiff can maintain an action of replevin in a State court, to obtain his property in the bankrupt's possession. We are of opinion that he can. There is a question as to the title to property and the right of possession of it. The general rule is that, when such a question arises both in a State court and a court of the United States, the court which first gets possession of the property, under its process, acquires jurisdiction. *Taylor* v. *Carryl*, 20 How. 583. *Freeman* v. *Howe*, 24 How. 450. *Covell* v. *Heyman*, 111 U. S. 176. In *White* v. *Schloerb*, 178 U. S. 542, the court considered questions very similar to that now before us, the principal difference being that, in that case, after the adjudication in bankruptcy the referee ordered the property to be locked in a building to await the appointment of a trustee, and it was being so kept under his order when the writ of replevin was issued. The court held

that it was in the actual possession of an officer of the law, who held it for creditors under the adjudication of the court, and that this control left the State court with no jurisdiction to take it by a writ of replevin.   As we understand the decision, the case is made to turn upon the possession so acquired, and there is no intimation that, without such possession, the mere adjudication would put the property beyond the jurisdiction of a State court to take it under a proper process as the property of a person other than the bankrupt.   There are broad statements, in opinions in some of the district and circuit courts of the United States, to the effect that an adjudication of bankruptcy is a caveat to all the world, with the effect of an attachment and injunction, and that possession of all property in the peaceable possession of the bankrupt is forthwith vested in the bankruptcy court.   But we have found no adjudication to that effect in a case like the present, where the property of a third person was involved, and where nothing had been done to acquire possession, other than to make the adjudication.   Similar language, used by Chief Justice Fuller in *Mueller* v. *Nugent*, 184 U. S. 1, was held in the later case of *York Manuf. Co.* v. *Cassell*, 201 U. S. 344, to have been used in reference to the facts of that case, and not to be of universal application.   We are of opinion that the court had jurisdiction.

The plaintiff's exceptions raise the question whether there was evidence to warrant a finding that the property in question was bought by the bankrupts fraudulently, with an intention not to pay for it.   The law in reference to the general question of what constitutes a fraud of this kind, in a purchase by an insolvent person, was discussed at length, with a citation of cases, in *Watson* v. *Silsby*, 166 Mass. 57.

In the present case the contract for purchase was made eight or ten months before the adjudication of bankruptcy.   It does not appear, and the evidence would hardly warrant a finding, that the purchasers then were insolvent.   It could not be found that, at the time of making the contract, they intended not to pay for the goods.   The plaintiffs were the manufacturers of the blankets which were replevied, and which were delivered under the order of purchase in the last days of August, from five to eight months, as we understand, after the order was given.

Unless the evidence would warrant a finding that the purchasers formed an intention not to pay for them at the time when they were received, or previously, it is plain that the plaintiff cannot recover. Whether such an intention, formed at that time, in reference to goods which were honestly ordered long before and were delivered in pursuance of the order, would be such a fraud as would entitle the plaintiffs to a rescission of the contract, we do not find it necessary to decide; for if we assume that it would, we do not find evidence of the existence of the intention. As to the defendant, Farwell, it is plain that there is no such evidence. The uncontradicted testimony is that "he was very little at the store"; that he was in charge of another department of the business in another place; that his partner, "Claflin, had full charge of all the bookkeeping, banking, and the entire financial part of all the business of the firm," and that, until September 1, 1906, Farwell supposed they were financially solvent.

As to the other partner, Claflin, there is nothing in the financial condition of the firm on which to found an argument that, in the last part of August, when the goods were delivered, he intended not to pay for them. He was then in charge of the business. The blankets had been ordered by him in the early part of the year, in the ordinary course of the firm's business, for fall delivery. About September 1 he went to Greenfield, New Hampshire, and it appeared, soon after, that the firm's assets were $12,000 or $13,000 and its direct liabilities $18,000 or $20,000, with a contingent liability of $15,000 for indorsements. While the firm was financially embarrassed and insolvent, it does not appear that, before the end of August, he had given up the hope and expectation of continuing the business and ultimately paying all his debts. Often the proprietors of such a business fail to realize how deeply they are involved until a crisis comes which results in a full disclosure. The receipt of these goods in the usual and ordinary course of business, which had been ordered many months before in the ordinary course of business, does not warrant a finding that he entertained a fraudulent purpose in regard to them, merely from the fact that the firm was then insolvent, as the evidence shows.

It does not appear that either of the defendants had knowl-

edge which left them with no reasonable expectation of paying for the goods when they were received. The facts relied upon are very different from those that appear in *Watson* v. *Silsby, ubi supra.* As fraud is never to be presumed, they fall short of establishing the wrongful conduct which the plaintiffs endeavored to prove.

*Exceptions overruled.*