Argued October 1, affirmed October 20, rehearing denied December 1, 1914.

# MARTINI v. OREGON-WASHINGTON R. & N. CO.

### (144 Pac. 104.)

#### New Trial—Proceedings to Procure—Order.

1. Since an order granting a new trial is appealable, the court, in granting a new trial, should state upon what grounds it was granted.

#### New Trial—Grounds—Want of Evidence.

2. Under Article VII, Section 3, of the Constitution providing that no fact tried by a jury shall be otherwise re-examined in any court, unless the court can affirmatively say there is no evidence to support the verdict, a verdict can be set aside for want of evidence only when the court can affirmatively say that there is no evidence to support it.

#### Evidence—Weight and Sufficiency.

3. In order that a verdict may be supported by the evidence, there must be some legal evidence tending to prove every material fact in issue, as to which the prevailing party has the burden of proof.

#### Negligence—Actions—Pleading.

4. In actions for negligence, the complaint must state the negligent acts or omissions constituting the cause of the action.

#### Appeal and Error—Review—Questions of Fact.

5. In determining whether there was legal evidence to support a verdict, where the complaint alleged, as the negligent acts of defendant, the high and dangerous speed of its train, the failure of employees to give plaintiff warning of its approach, and the failure to ring the bell or blow the whistle as it approached plaintiff, the Supreme Court can consider no other negligent acts or omissions.

#### Railroads — Operation — Injuries to Persons on Track — Issues and Proof.

6. Under Section 725, L. O. L., providing that the evidence shall correspond with the substance of the material allegations and be relevant to the questions in dispute, and collateral questions shall be avoided, where a complaint for injuries to a track-walker alleged, as the negligent acts and omissions of the railroad, the high and dangerous speed of its train, the failure to give warning, and the failure to ring a bell or blow a whistle, evidence of failure to keep a lookout, to see plaintiff on the track, or to stop the train before it reached him was irrelevant.

#### Railroads—Operation—Injuries to Person on Track—Evidence.

7. Evidence that a train was run at 20 miles an hour in a rural district, not near a sharp curve or crossing, where the rules of the railroad permitted a speed not exceeding 60 miles an hour, in the

absence of any law or rules of the state regulating the speed of trains in the locality, is insufficient to show negligence.

**Railroads—Operation—Injuries to Person on Track—Care Required.**

8.  In the absence of any law, rule or custom in the state where an accident occurred requiring it, a railroad is under no duty to a track-walker in a rural district, not near a crossing or sharp curve, who heard the approach of the train, to ring a bell or blow a whistle.

**Railroads—Operation—Injuries to Person on Track—Burden of Proof.**

9.  In an action for injuries to a track-walker, the burden is on plaintiff to make out a *prima facie* case of negligence of the railroad.

**Railroads—Operation—Injuries to Person on Track—Assumption of Risk.**

10.  An experienced track-walker on a railroad, on accepting employment, assumes the risk of injury ordinarily incident to the work, even from the passing of trains of a railroad other than his employer.

[As to duty of person working on track to look out for and avoid passing trains, see note in Ann. Cas. 1913A, 440.]

From Multnomah: WILLIAM N. GATENS, Judge.

This is an action by Calestro Martini against the Oregon-Washington Railroad & Navigation Company, a corporation, to recover for personal injuries. From an order setting aside a verdict in favor of plaintiff and granting a new trial, he appeals. The facts are stated in the opinion of the court.   AFFIRMED.

For appellant there was a brief over the name of *Messrs. Kimball & Ringo,* with an oral argument by *Mr. Ernest R. Ringo.*

For respondent there was a brief over the names of *Mr. Charles E. Cochran, Mr. Arthur C. Spencer* and *Mr. William W. Cotton,* with an oral argument by *Mr. Cochran.*

Department 1.   MR. JUSTICE RAMSEY delivered the opinion of the court.

This is an action to recover damages for personal injuries, occurring to the plaintiff in the State of Washington. The Northern Pacific Railway Company

maintains a double track railroad from Portland to Tacoma and other points in the State of Washington. This road runs *via* Vancouver, Ridgefield and other towns in Washington.  By authority of a contract with the Northern Pacific Railway Company, the defendant runs regular passenger and freight trains over said double track railroad from the City of Portland *via* Vancouver, Ridgefield and other points, to Tacoma and other Puget Sound cities.

On the 3d day of February, 1913, the plaintiff was in the employ of the Northern Pacific Railway Company as a track-walker, at and near Ridgefield, in Clarke County, State of Washington.  It was his duty to walk the said track of said company from the station at Ridgefield south, a distance of a mile and a half, in Clarke County.  He was to begin his work at 7 o'clock A. M., each day, and walk over said track frequently during the day, for the purpose of discovering obstructions thereon, etc.  He was not a servant or employee of the defendant.  From 30 to 40 trains pass over said track daily.  On February 3, 1913, he appears to have begun his work as early as 6:15 A. M., and when he had walked about a mile south of Ridgefield, at about 7 o'clock A M., he was struck by a freight train of the defendant going south.  His left leg was broken, and he received other serious injuries, which, he contends, incapacitated him permanently to earn a living.  He demands damages in the sum of $25,000.

The following portions of the complaint state the plaintiff's cause of action:

"That on the 3d day of February, 1913, plaintiff was employed by the Northern Pacific Railway Company on said double track line of railway between the City of Tacoma, Washington, and, the City of Portland, Oregon, as a 'track-walker' between the stations

of Ridgefield and Felida, in Clarke County, Washington, and that in the performance of his duty as such track-walker on said day, at about the hour of 7 A. M., plaintiff was walking on said track on the lookout for obstructions, and, while engaged as aforesaid, defendant's employees and servants, in charge of one of defendant's trains running on said double track, carelessly and negligently ran said train at a high and dangerous rate of speed upon plaintiff, and said train struck and hit plaintiff and threw plaintiff with great force and violence off said track. That defendant's employees and servants, in the operation of said train as aforesaid, carelessly and negligently failed to give any warning to plaintiff of said train, and carelessly and negligently failed to ring the bell or blow the whistle of the said train as said train approached plaintiff while in the performance of his duty as aforesaid, and that plaintiff, because of the careless and negligent acts of defendant's servants and employees as aforesaid, suffered a compound fracture of his left leg, fractures of ten ribs, great and severe bruises, contusions, lacerations and wounds about the head, back, arms, lungs, legs and his private organs, and because thereof plaintiff has suffered and still suffers great pain and mental anguish, and because thereof plaintiff has been and now is incapacitated, permanently disabled, and unable to earn his livelihood."

The defendant denied most of the allegations of the complaint, and set up negligence on the part of the plaintiff. After alleging that it was very foggy on the morning of February 7, 1913, when the plaintiff was injured, etc., the answer alleges:

"A short distance from Ridgefield, Washington, and outside the yard limits, and particularly on the main track of said railroad, the plaintiff was walking along between the rails thereof. His presence was not known to the defendant or its crew in the operation of said train. Said plaintiff did wrongfully trespass and go upon said railroad track, and did carelessly and

negligently be and remain upon, and walk along, said railroad track outside of yard limits, without right, without authority, and against the will and consent of either the Northern Pacific Railway Company, or of this defendant, or of any other railroad company operating trains thereover. Defendant's train, upon said occasion, was approaching Ridgefield, was reasonably well loaded and making a large amount of noise, which sounds of the running train were easily and readily heard for some time prior to the time the said train arrived at the point where plaintiff was walking. The headlight of the defendant's engine was burning brightly during all of the time the train was proceeding from Ridgefield to and beyond the place where plaintiff was walking. The plaintiff had no right to be or remain upon, or walk along, said track, but was trespassing thereon, and, notwithstanding plaintiff was wrongfully and unlawfully on said railroad track, yet he did also carelessly and negligently fail, neglect and omit to listen for the approach of defendant's said or any train, or to look for the approach of the same, and, if he had listened and looked for the said train, he could have heard its approach in ample time to have stepped from said track and avoided the collision hereinafter mentioned. Said plaintiff did also, carelessly and negligently remain upon and walk along said track, and did continue to do so until said train arrived within such close proximity to plaintiff that a collision with him was unavoidable, and said engine did collide with plaintiff, whereby he suffered injury, if any, and not otherwise. The defendant was operating said train at a reasonable rate of speed, and had no reason to anticipate the presence of the plaintiff on said track at said point."

The reply traversed the larger part of the new matter of the answer. A verdict was rendered in favor of the plaintiff for the sum of $12,500, and a judgment was entered thereon. The defendant filed a motion to set aside the verdict and judgment, and for a new

trial, for various reasons, including errors of law, occurring at the trial and excepted to by the defendant. The grounds for the motion were set out with particularity, but we find it unnecessary to consider more than one of the reasons stated in the motion, to wit: "That there is no legal evidence to support said verdict." The court below took said motion under advisement, and later allowed the same and granted a new trial. The order granting a new trial is expressed in general terms; but we understand that the trial court was of the opinion that there is no legal evidence to support the verdict.

1. Under our present statute an order granting a new trial is appealable, and we think that, when a trial court grants a new trial, it should state upon what ground it grants it.

2. A verdict of a jury can be set aside for want of evidence to support it only when the court can say affirmatively that there is no evidence to support it: Article VII, Section 3, of the Constitution.

3. In order that a verdict may be supported by the evidence, there must be some legal evidence tending to prove every material fact in issue, as to which the party, in whose favor the verdict was rendered, had the burden of proof.

4. Under the settled practice in this state, in actions for negligence, it is necessary that the complaint state the negligent acts or omissions constituting the cause of action: *Heilner* v. *Union County,* 7 Or. 83 (33 Am. Rep. 703); *Kohn* v. *Hinshaw,* 17 Or. 308 (20 Pac. 629); *Woodward* v. *Oregon R. & N. Co.,* 18 Or. 289 (22 Pac. 1076).

5. In this case, the negligent acts of which the plaintiff complains are stated in the complaint. Briefly stated, they are as follows: (a) That the defendant's

employees and servants "carelessly and negligently ran said train at a high and dangerous rate of speed"; (b) that the defendant's employees and servants, in operating said train, "carelessly and negligently failed to give any warning to the plaintiff of the approach of said train, and carelessly and negligently failed to ring the bell or blow the whistle of said train as said train approached the plaintiff, while in the performance of his duty as aforesaid, and that the plaintiff, because of the careless and negligent acts of the defendant's servants and employees, as aforesaid, suffered a compound fracture," etc.

The foregoing are all of the negligent acts and omissions of which the plaintiff complains. The acts or omissions complained of are the alleged high and dangerous rate of speed at which the train was running; the failure of the employees and servants of the defendant to give to the plaintiff warning of the approach of the train; and the failure to ring the bell or blow the whistle of the train as it approached the plaintiff. The plaintiff's right to recover is based on said allegations of negligence, and no other negligent acts or omissions can be considered by us.

6. Section 725, L. O. L., provides that the evidence shall correspond with the substance of the material allegations, and be relevant to the questions in dispute, and collateral questions shall therefore be avoided. There is no allegation that the employees of the defendant neglected to keep a lookout for the plaintiff on the track, or that they were guilty of negligence in not seeing him on the track or in not stopping the train before it reached him. These matters not having been alleged, evidence to prove them was irrelevant. The plaintiff during the trial asked leave

73 Or.—19

of the court below to amend his complaint, so as to allege that the defendant neglected to keep a lookout for the plaintiff on the track, etc., but the proposed amendment was not allowed. The refusal of the trial court to permit this amendment is not assigned as error. We do not say that these matters should have been pleaded. We merely call attention to the fact that they were not pleaded, to show upon what narrow ground the plaintiff bases his right of action. In order that he should have a right to a verdict, it was necessary for him to produce evidence tending to prove some of the alleged negligence.

7. There was a total failure to prove that the train that struck the defendant was running at a high or dangerous rate of speed. The undisputed evidence showed that the rate of speed did not exceed 20 miles an hour. The train had just passed through the town of Ridgefield, where the city ordinances prohibit a greater rate of speed than 15 miles an hour. The train had reduced its speed so as not to exceed the rate of 15 miles an hour while going through that town. All the evidence on that subject is to the effect that the train was not running at a greater rate than 20 miles an hour when it struck the plaintiff. The evidence shows that the point where the plaintiff was struck is in the rural district, and that there was no real need of a low rate of speed at that point. The evidence showed that, according to the rules of the defendant, the rate of speed at that point was not allowed to exceed 60 miles an hour; but there was no other limit in the company's rules.

The pleadings do not allege, nor does the evidence show, that the State of Washington has any law or rules regulating the speed of trains applying to the locality where the plaintiff was injured. There was

no evidence tending to show that the defendant's train that struck the plaintiff was running at a high or dangerous rate of speed when it struck him, and hence there was a failure of proof on that point.

8. The other allegations of negligence relate to the failure of the employees of the defendant to give to the plaintiff any warning of the approach of the train and their failure to ring the bell or blow the whistle of the train as it approached the plaintiff.

The evidence shows that the plaintiff was struck before 7 o'clock A. M. on February 3, 1913, and that it was not yet daylight, and that it was foggy at that point. The evidence shows also that the employees of the defendant in charge of the train did not see the plaintiff at all before he was struck, and that they did not give any warning or ring the bell or blow the whistle. They did not know that he was there, and they passed on without knowing that he had been struck. There is no conflict in the evidence on this point. All admit that it was yet dark and foggy, and that no signals were given, nor was any bell rung or whistle blown. It is shown also that the trainmen did not see the plaintiff or know that he was there. There was no public crossing or sharp curve there or near where the plaintiff was struck. This accident happened in the State of Washington, but neither the pleadings nor the proof shows any law of that state, or any rule of the defendant, requiring any signals to be given or any bell to be rung or whistle to be blown, under the facts shown in this case, at or near the point where the plaintiff was struck. If the trainmen had seen him on the track or had known that he was there, it would have been their bounden duty to give warning and to use all reasonable efforts to avoid injuring him. He was not an employee of the defend-

ant. We presume that it will not be contended, by anyone, that it was the duty of the defendant to ring the bell or sound the whistle constantly when passing through rural districts, when it did not know or have notice of any person's being on the track.

The defendant contends that the injury to the plaintiff was caused by his own negligence. The evidence shows that he is an Italian, and had been in this country 7½ years, and that he had had experience as a track-walker in Wisconsin and in the State of Washington. He had worked for the Northern Pacific Railway Company at Lind, Washington, as a track-walker; but he had worked for the Northern Pacific at Ridgefield only two days prior to the day on which he was injured. He began his work on February 3d, about 6:15, at Ridgefield. He was struck about a mile south of Ridgefield by a freight train of 31 cars going south, as early as 7 o'clock A. M. When he left Ridgefield there was a freight train on the side-track there; and the plaintiff expected to hear it whistle when it started out. At first the plaintiff walked on the left-hand track going south, but crossed over to the right-hand track and walked on the west ends of the ties. The plaintiff says that he could see a train approaching from the south about 300 feet, and that, from his position on the ends of the ties on the west side, he could see north about 450 feet, and he says that, if he had been on the other track, he could have seen north along the track a mile. He says there was an echo there that prevented his being able to determine from which direction a train was coming when he heard the noise. On cross-examination the plaintiff says:

"Yes, sir; I listened. I heard this train on the side-track (at Ridgefield) going back and forth. After about a second, I heard another train coming, like a passenger train, a through fast train."

Asked what there was to hinder his getting off the tracks when he heard the train coming, he says, ''I can't get off both tracks''; and as a reason for said statement he says: ''No. The place where I got struck was a wide ditch, full of water, and muddy.'' Then he was asked, ''You preferred to stay on the track, hearing the train coming, to getting in that water?'' and he answered, ''Yes, I walked on the other side, so if a train was coming both ways, to get away from the train—no other chance to get away.'' He was then asked, ''You say there was a ditch where you fell with water in it that kept you from getting off the track?'' He answered, ''Yes, sir.'' He said that this ditch was five or six feet wide, and that he ''was walking in this ditch the day before clearing it out. I took a shovel and would go right into the mud.'' He says that he heard the train coming, but did not know from which direction it came. He says that he had plenty of time to get off the track. ''If there had been a chance to get away on the other track,'' and that it was the echo that fooled him.

It appears from the plaintiff's own evidence that he heard the train before it struck him, and that he could have gotten out of its way by jumping into the ditch that contained water and mud, but that he was not willing to do that.

3 Elliott, Railroads (2 ed.), Section 1298:

''Ordinarily, section-men or track-men assume the risk incident to the running of trains, whether extra trains or trains running on schedule time. Such employees are bound to know that regular trains may be delayed and pass at certain intervals, and that wild or extra trains may be sent over the road, and they assume the risk of danger therefrom, except in cases where, by some act or conduct of the employer, he has impliedly or expressly represented that no wild or

extra trains shall imperil the safety of such employees."

33 Cyc., page 782, says:

"In the absence of statutory requirements or knowledge of a person's perilous position, a railroad company is ordinarily under no duty to give warning by bell or whistle of the approach or movement of its trains at places other than public crossings, depots or in towns or cities. * * This rule, however, is subject to the qualification that where, together with other circumstances increasing the risk of accident, the railroad company has reason to anticipate that persons will be on its tracks at certain places, as in towns or cities, or at other places where persons have been accustomed to cross or go upon the tracks for a long time within the railroad company's knowledge, it is the duty to exercise care to give warning, by bell or whistle, of an approaching train. * * But the omission to sound a bell or whistle, although required by statute, is not negligence as to one who sees or is aware of the approaching train, or as to one who could not have heard the warning, if given."

In this case the plaintiff heard the train approaching, and the sound of a bell or a whistle would not have been of any assistance to him, for he knew without it that the train was approaching him, and he refused to jump out of the way, because he thought he would land in the ditch that contained water and mud, beside the track.

In *Ginnochio* v. *Illinois C. R. Co.,* 155 Mo. App. 171 (134 S. W. 131), the Supreme Court of Missouri says:

"It seems that the more recent decisions of our Supreme Court adopt the view of the Supreme Court of the United States reflected in *Aerkfetz* v. *Humphreys,* 145 U. S. 418 (36 L. Ed. 758, 12 Sup. Ct. Rep. 835, * * and the Supreme Court of Massachusetts in *Riccio* v. *New York etc. R. Co.,* 189 Mass. 358 (75 N. E. 704), * * to the effect: First, that, because of the

peculiar nature of the employment, the railroad owes no duty to the section-hand other than to avert his injury after the engineer has actually seen his perilous situation; and, second, that, if a section-man is run upon and injured while performing his task, he is to be regarded negligent in not looking out for the train. In other words, the doctrine is that, in so far as section-men are concerned, the railroad is to be regarded under the law as entitled to a clear track, and such employees are to look out for their own safety, for there is a valid distinction in so far as the matter of duty pertains toward men engaged for the purpose of repairing the tracks and a stranger or other person who is not familiar with the operation of the road.''

In *Riccio* v. *New York R. R. Co.*, 189 Mass. 359 (75 N. E. 704), the court says:

''We see no negligence on the part of the defendant. The plaintiff knew that he was at work in a railroad-yard where trains and engines are frequently passing. There was no undertaking upon the part of the defendant to give him warning, but he was expected to look out for himself. If the engineer failed to sound the whistle or ring the bell, it was not negligence for which the defendant was responsible. Both by the common law and by the law of the State of Connecticut, as we understand it to be under the decisions of that state which were put in evidence (the accident occurred in that state), there is no evidence of negligence of the defendant.''

In *Degonia* v. *St. Louis, I. M. & S. Ry. Co.*, 224 Mo. 564 (123 S. W. 808), the syllabus in part is:

''A section-hand killed on a track by a fast passenger train approaching a station and crossing was not entitled to rely on the giving of station or crossing signals, under Rev. Stats. 1899, requiring railroads to give certain signals at crossings, and making the railroad company liable for damages which any person

might sustain 'at such crossing,' when the bell is not rung or the whistle sounded as required. \* \* ''

In *Blankenships' Admr.* v. *Norfolk & W. Ry. Co.,* 147 Ky. 263 (143 S. W. 997), the court says:

"We have been referred to no case, or authority of any kind, which holds that it is the duty of the company to give a track-walker notice of the approach of trains. Evidently, from the very nature of the case, it would be unreasonable and impracticable, as well as unnecessary, to undertake such a duty. His work as a track-walker necessarily placed Blankenship upon the tracks of the road, and it goes without argument that the duty was imposed upon him to take such reasonable care of himself, in the performance of his duties, as would prevent him from being injured by a passing train. In failing to do so in this case, he was guilty of the grossest negligence, for which he can blame no one but himself."

In *Keefe* v. *Chicago & N. W. Ry. Co.,* 92 Iowa, 184 (60 N. W. 504, 54 Am. St. Rep. 542), the court says:

"The presence of the tracks, and the cars thereon, and the movement of engines, were constant warnings to him (who worked about the depot and yard) of danger. It is the duty of persons employed in such places to be reasonably diligent in guarding against accidents, and especially to observe and keep out of the way of moving engines and cars. They have no right to rely wholly upon the persons in charge of them to prevent accidents, but must use due care to avoid danger."

See, also, *Aerkfetz* v. *Humphreys,* 145 U. S. 418 (36 L. Ed. 758, 12 Sup. Ct. Rep. 835); *Cincinnati Indianapolis, St. Louis & Chicago Ry. Co.* v. *Long,* 112 Ind. 166 (13 N. E. 659); *Van Dyke* v. *Missouri Pac. Ry. Co.,* 230 Mo. 259 (130 S. W. 1).

9. The burden of proof was upon the plaintiff to make out a *prima facie* case of negligence upon the

part of the defendant. The evidence for the plaintiff showed that the train that struck him was going at a rate of speed not greater than 20 miles per hour. There is no conflict in the evidence on this point, and hence it is clear that that was neither a high nor a dangerous rate of speed at that point. The rules of the company permitted a maximum rate of speed of 60 miles per hour. The rate of 20 miles per hour at that point was not negligence. It was only one third of the maximum rate allowed by the defendant's rules.

The place at which the plaintiff was struck is in the rural district and not near a public crossing or a sharp curve, and there does not appear to have been any law, rule or custom requiring the defendant to ring a bell or sound a whistle at that point. The undisputed evidence is that the trainmen did not see the plaintiff, and that they did not know of his presence on the track. There is no conflict in the evidence upon these points. Hence we hold that, under the facts shown by the evidence, it was not the duty of the defendant to give the plaintiff warning of the approach of the train by ringing the bell, sounding the whistle, or otherwise. If the defendant had known or had had notice of the presence of the plaintiff on the track, it would have been its bounden duty to ring the bell and sound the whistle and use all reasonable efforts to avoid injuring him.

It was dark and foggy, and the plaintiff was on neither track nor on the space between the tracks. According to his own evidence, he was walking on the ends of the ties west of the right-hand track, and hence he was not in a position to be seen as readily as he would have been if he had been on the track. He admits that he heard the train that struck him and knew it was approaching, but contends that he thought it

was approaching from the south, instead of from the north. The fact that he heard the train and knew that it was approacing him shows that he was properly warned of the train's approach by the noise of the train.

10. Ringing the bell and blowing the whistle would have added nothing to this warning, because he admits hearing the noise of the train and knowing that it was approaching him. This afforded him notice of the danger, and it then became his duty to get out of· the way of the train. This he failed to do. It was his duty to be on the alert for his own protection. He had had experience as a track-walker, and knew the dangers incident to that occupation. When he began work as a track-walker, he knew the dangers ordinarily incident to that calling, and assumed the risks ordinarily incident thereto.

The defendant did not know that the plaintiff was on or near the track, and hence it was not guilty of negligence in that it did not sound the whistle or ring the bell. Furthermore, the plaintiff admits that he heard the train and knew that it was approaching him, and hence he had sufficient notice and warning that the train was approaching him, and he had an opportunity to escape injury by jumping into the mud and water, but he refused to do so, because he was not willing to get wet and muddy. This tends to prove negligence on his part, but we do not find it necessary to decide whether he was negligent or not.

The court below set aside the verdict and granted a new trial for want of evidence to support the verdict. We hold that the undisputed evidence shows that the defendant was not guilty of the negligence charged, and that there was no evidence to support the verdict.

The burden of proof was upon the plaintiff to show that the defendant was guilty of negligence that was the proximate cause of the injury. The evidence showed that the plaintiff was seriously injured; but that is not sufficient. Some default on the part of the defendant must be shown. Beach, Contributory Negligence (3 ed.), Section 43, says in part:

"The defendant must not be 'a forgotten man.' There must be a default on his part, a want of ordinary care, or the plaintiff cannot recover."

We approve the order of the court below granting a new trial, and said order is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE MOORE concur.