Argued March 29, affirmed April 26, rehearing denied May 17, 1927.

## MAUPIN WAREHOUSE COMPANY *v.* F. S. FLEMING.

(255 Pac. 606.)

**Sales—Seller may Rescind for Buyer's Insolvency Only When Buyer Concealed Insolvency and had No Intention or Reasonable Expectation of Paying for Goods.**

1. Seller may rescind sale for buyer's insolvency and recover goods when, and only when, the buyer at the time of purchase was insolvent or in failing circumstances, and had no intention or reasonable expectation of paying for property, and concealed or misrepresented the facts.

**Sales—Seller Seeking to Recover Goods for Buyer's Fraud must Prove All Necessary Elements.**

2. Seller seeking to recover goods for buyer's fraudulent representations must affirmatively prove all necessary elements of fraud.

**Fraud—Fraud is Never Presumed.**

3. The law never presumes fraud, but, on the contrary, the presumption is always in favor of honesty.

---

1. Rescission of sale for fraud in purchase on credit, see note in 18 Am. St. Rep. 362. When purchase by insolvent deemed fraudulent, see notes in 27 Am. Rep. 504; 2 L. R. A. 154; 14 L. R. A. 264. Lack of reasonable expectation of ability to pay as equivalent to intention not to pay, see note in 6 L. R. A. (N. S.) 556. See, also, 24 R. C. L. 303.

**Sales—Insolvency of Buyer of Grain Bags on Credit Does not Authorize Seller to Rescind Without Proof of Intention not to Pay.**

4. Insolvency at time of sale of buyer of grain bags on credit would not alone entitle the seller to rescind the sale, after a destructive hail-storm and decline in the price of grain, in absence of proof of buyer's preconceived intention not to pay.

**Evidence—Evidence to Support Verdict must Tend to Prove Every Material Controverted Fact.**

5. In order that a verdict may be supported by evidence, there must be some legal evidence tending to prove every material fact in issue.

**Witnesses—Seller Seeking Rescission for Alleged Fraud of Buyer Vouches for Credibility by Calling Him as Witness.**

6. Seller seeking to rescind sale for alleged fraudulent representations of buyer insolvent at time of sale shows faith in buyer's truthfulness by calling him as witness.

Appeal and Error, 4 C. J., p. 854, n. 71.
Evidence, 22 C. J., p. 146, n. 51, p. 147, n. 52, 53, 54.
Fraud, 27 C. J., p. 44, n. 57, p. 45, n. 58, 61, p. 46, n. 62, p. 47, n. 76.
Sales, 35 Cyc., p. 134, n. 10, 11, 12, 13, p. 135, n. 14, p. 157, n. 86, 88.
Trial, 38 Cyc., p. 1557, n. 14.
Witnesses, 40 Cyc., p. 2653, n. 95.

From Wasco: FRED W. WILSON, Judge.

Department 2.

The plaintiff corporation sold to one Irvine Morris 3,000 grain sacks, taking in payment therefor Morris' promissory note for $450, bearing interest at 8 per cent and due 90 days from date. As to securing the note, plaintiff pleads the following written agreement:

"Maupin, Oregon, July 30, 1̲ ̲3.
"It is understood that the following described note, No. 11, for 3,000 sacks, be secured with wheat delivered at Maupin warehouse, the same to be sold at expiration of note.
"MAUPIN WAREHOUSE COMPANY,
"By GEO. L. MORRIS, Manager."

---

4. See 24 R. C. L. 304, 305.

The plaintiff alleges that, when the agreement was entered into, Morris knew that his entire crop had been pledged to F. S. Fleming, the defendant herein, and that Morris made the agreement with plaintiff for the purpose of cheating and defrauding the plaintiff. Plaintiff demands judgment as follows: On its first cause of action, for the possession of 3,000 grain sacks, or for the sum of $450 as the value thereof; on its second cause of action, for damages in the sum of $50; on the third, for the possession of 300 grain sacks, or, in default of delivery thereof, for the sum of $45; and, on the fourth, for damages in the sum of $5.

The answer denies the material allegations of the complaint. As affirmative matter, it avers, among other things, that Morris and his wife, for a consideration of $6,500, with interest at 8 per cent from October 31, 1922, sold and delivered to the defendant the sacks described in the complaint, with grain therein, and, further, that the defendant had no knowledge that Morris had made fraudulent representations to the plaintiff relating to the sacks.

Upon trial, and at the conclusion of plaintiff's testimony, the defendant moved for a nonsuit, which was granted by the court upon the ground that plaintiff had failed to prove fraud on the part of Morris at the time the sacks were sold, and had failed to connect the defendant with the original alleged fraudulent transaction. Plaintiff appeals.

AFFIRMED.   REHEARING DENIED.

For appellant there was a brief over the names of *Mr. Harry G. Hoy* and *Mr. Robert E. Ellenwood,* with an oral argument by *Mr. Hoy.*

For respondent there was a brief and oral argument by *Mr. Frank G. Dick.*

BROWN, J.—The testimony of Irvine Morris, called by the plaintiff, is to the effect that he had purchased 3,300 sacks from the plaintiff Maupin Warehouse Company; that he had filled them with wheat from his 1923 crop and delivered them to the defendant F. S. Fleming, receiving therefor certain promissory notes which had been duly made and executed by Morris and his wife. He testified that he had cropped 650 acres; that the place had yielded 7,800 bushels of grain, which was harvested at an expense of $3.50 per acre. On cross-examination he testified:

"Q. I am not just clear on the testimony you gave about how you intended to use this note * * to raise the cash to pay for the sacks at the time you signed the agreement. A. The note was made for 90 days, and during the 90 days I had plenty of time to harvest the crop and haul it and sell it and arrange for my business for the next year.

"Q. What do you say as to the small note that was signed giving you 60 days? A. The crop was nearly harvested before I needed the last few sacks, the last 300.

"Q. How did you come to fail in your expectations? A. The hail-storm was the chief cause of it.

"Q. How did the hail-storm affect the situation? A. It cut the crop from one half to one third, reduced the crop yield.

"Q. Explain to the jury how it did that. A. When the grain was nearly reaped the hail-storm came up, and when the hail-storm was over about one half or one third of the grain was on the ground. In places it was worse than others.

"Q. In other words, the hail beat the grain out of the heads, and it fell on the ground? A. Yes, sir. * *

"Q. Well, now, can you tell how much wheat or the value of the wheat lost by the hail-storm? A. Well, the entire crop was reduced probably four or five thousand dollars."

1. A sale may be rescinded and the subject of the sale recovered when the vendee at the time of purchase was insolvent or in failing circumstances and did not intend to pay for the property, or had no reasonable expectation of doing so and deceitfully concealed or misrepresented the facts: *Skinner* v. *Michigan Hoop Co.,* 119 Mich. 467 (78 N. W. 547, 75 Am. St. Rep. 413); notes, 8 Ann. Cas. 507. However, it is a frequently stated general rule that, to authorize a vendor of goods to disaffirm the sale and recover against his vendee or a subpurchaser with knowledge, the concurrence of three facts must be shown:

"(1) The purchaser must have been insolvent, or in failing circumstances; (2) he must have had at the time a preconceived intention not to pay for the goods, or no reasonable expectation of being able to do so; (3) there must have been on his part an intentional concealment of these facts, or a fraudulent representation in reference to them." 24 R. C. L., § 580.

See notes, 8 Ann. Cas. 507.

2, 3. The plaintiff alleged its right to recover on the ground of the vendee's fraudulent representations at the time of the sale. It follows that, having alleged fraud, the plaintiff must affirmatively prove all the elements necessary to make out a case of fraud: 27 C. J. 47. The law never presumes fraud, but, on the contrary, the presumption is always in favor of honesty: 22 C. J., 146.

In the case of *Utah National Bank* v. *Nelson,* 38 Utah, 169, 196 (111 Pac. 907), we find a set of facts very similar to the facts in the case at bar; and the Supreme Court of Utah, in rendering its opinion, made the following declaration:

"Where a transaction is explainable upon either of two different theories, one of which is consistent

with good faith and fair dealing and the other involves fraud and deception, the explanation consistent with honesty and legality will be accepted unless the evidence clearly preponderates in favor of the illegal aspect of the transaction."

With this we are in full accord.

4. The proof shows that, at the time of the hearing, the purchaser was an insolvent, and, at the time of the sale, in failing circumstances. But, granting that he was an insolvent prior to the destruction of one third or one half of his crop of grain by hailstorm, this alone is not sufficient to entitle the vendor to a rescission of the sales contract. The weight of authority is to the contrary. The fact that the purchaser was unable to look into the breast of the future and foresee the coming of a destructive hailstorm, or foretell the decline in the price of wheat, does not brand him as a knave. Where a purchaser has no preconceived intention not to pay, his insolvency alone does not constitute fraud. This is supported by the holding of many courts. In *Franklin Sugar Ref. Co.* v. *Collier,* 89 Iowa, 69 (56 N. W. 279), it was said:

"The fact that an insolvent orders goods on credit is not fraudulent, unless coupled with an intent not to pay for them, or unless the natural and probable, if not necessary, result of his act is to defraud the seller."

Again, in *Hacker* v. *Munroe,* 56 Ill. App. 532, it was held that, where a vendee was insolvent and was not able to pay at the time of the purchase, but was a good-faith purchaser, intending to pay, the vendor could not rescind the sale on the ground of fraud. To similar effect are *Thompson* v. *Peck,* 115 Ind. 512 (18 N. E. 16, 1 L. R. A. 201); *Coffin* v. *Hollister,* 27 N. Y. St. Rep. 637 (7 N. Y. Supp.

734); *Kelsey* v. *Harrison,* 29 Kan. 143; *Ayers* v. *Farwell,* 196 Mass. 349 (82 N. E. 35).

5. It is urged that the record discloses some evidence sustaining the plaintiff's cause, and, therefore, that the court erred in granting a nonsuit. That contention is answered in *Martini* v. *Oregon-Washington R. & N. Co.,* 73 Or. 283 (144 Pac. 104), where Mr. Justice RAMSEY, speaking for this court, said:

"In order that a verdict may be supported by the evidence, there must be some legal evidence tending to prove every material fact in issue."

See, also, *Schneider* v. *Tapfer,* 92 Or. 520 (180 Pac. 107).

6. The testimony tends to show that the purchaser was hopeful of his ability to pay his note. He had bought this large grain farm, and he expended all he had made and all that he possessed in cultivating the farm in the hope of ultimately paying therefor. He lost all of his possessions, but he at no time became discouraged until his crop was largely destroyed and the price obtainable for the remainder reduced to eighty cents per bushel. Besides, the vendor showed his faith in the truthfulness of the vendee when he called him to the witness-stand. See the case of *Chance* v. *Graham,* 76 Or. 199 (148 Pac. 63), where this court, speaking through Mr. Justice BURNETT, said:

"The plaintiffs called as their first witness the defendant Marion C. Young, thereby vouching for his credibility."

See, also, *Sitton* v. *Peyree et al.,* 117 Or. 107 (241 Pac. 62, 242 Pac. 1112).

The court did not err in granting the defendant's motion for an involuntary nonsuit. This case is affirmed.                    AFFIRMED.   REHEARING DENIED.

BURNETT, C. J., and BEAN and COSHOW, JJ., concur.