1. SALE—FRAUDULENT PURCHASE—REPLEVIN—RETURN OF CONSID-
ERATION.

   Whether plaintiff, in replevin for goods fraudulently purchased,
   must tender back negotiable paper, past due, given for the
   goods, or whether it is sufficient if he show at the trial that
   the paper has not been negotiated by him,—*quære.*

2. SAME—AFTER-CONCEIVED FRAUD—GOODS IN TRANSIT.

   A sale of goods is not rendered fraudulent, so as to entitle the
   seller to rescind, by the buyer's conceiving the intention,
   while the goods are in transit, of not paying for them.

3. SAME—SOLVENCY OF BUYER—REPRESENTATIONS.

   A letter ordering goods to be shipped in car lots, for which the
   writer agrees to accept 30-day drafts for the cost of filling the
   order, and to send check for the balance of the price when the
   goods are unloaded, is not a representation that the writer is
   solvent.

4. SAME—RESCISSION.

   A sale may be rescinded, and the property recovered, where the
   buyer, at the time of purchasing, was insolvent or in failing
   circumstances, and did not intend to pay for the goods, or
   had no reasonable expectation of doing so, and fraudulently
   misrepresented or concealed the facts.

Error to Saginaw; Snow, J. Submitted January 25,
1899. Decided March 6, 1899.

Replevin by Myron Skinner against the Michigan Hoop
Company and Melvin O. Robinson. From a judgment
for plaintiff, defendants bring error. Reversed.

*Trask & Smith,* for appellants.

*Snow & Snow* ( *C. H. Gage,* of counsel), for appellee.

HOOKER, J. In August, 1890, the Michigan Hoop
Company, a corporation doing business at Saginaw,

agreed to sell, upon commission, all hoops consigned to it by the plaintiff. The parties dealt for a time under this agreement. On February 11, 1897, the defendant wrote the following letter to the plaintiff:

"Saginaw, Mich., February 11, 1897.
"Myron Skinner,
"West Point, Ky.
"*Dear Sir:* We have arranged for storage at Detroit, and can take a good many hoops, if you can buy them. We do not want many syrup hoops, but can take one or two cars. We want mostly pork and tierce hoops. We will pay the following prices: Syrups, $7.00; pork, $7.00; tierce, $8.00 per M.; flour hoops, $4.00. You make 30-day drafts for what you will have to pay for the hoops, and, as soon as the hoops are unloaded, we will send you check for the balance. Bill all cars via C. H. & D. and M. C., and send us shipping receipts for each car promptly. Load straight car loads as much as possible; however, you can load some mixed car loads if you wish. This will give you a chance to do some business, if you get out and hustle. There are a good many hoops being made now, and the market is dull, but we think there will be a good trade during the summer. I inclose a letter, which you can show to people you wish to give drafts, which will help you some. Be sure and make all your billing as directed.         Yours truly,
"Michigan Hoop Co.,
"By E. W. Traver, Sec'y."

This paper accompanied the letter, and read as follows, viz.:

"Feb. 11, A. D. 1897.
"*To Whom it May Concern:*
"We will accept 30-day drafts drawn on us by M. Skinner, and made in payment for hoops.
"Michigan Hoop Co.,
"By E. W. Traver, Sec'y."

The plaintiff testified to shipping several cars under this arrangement, and drew upon the defendant, but the drafts were not paid, and, upon learning that the defendant had failed, he replevied one car load of the hoops in Detroit. He replevied three car loads in Gladwin, but, being un-

able to give the necessary bond, they were left in the custody of a transferee of the defendant. · He subsequently replevied three car loads in Saginaw. These last are involved in this action, and were worth $544. The defendant Robinson is cashier of a bank, and held a mortgage on the hoops and other property, in trust for certain creditors. It seems to be conceded that prior to February 11, 1897, the plaintiff had drawn, and the hoop company had paid, drafts to an amount exceeding $11,000. The defendant claims that there was due to it upon these about $8,000 on February 11th. This the plaintiff denied, claiming that from February, 1891, to a short time before February 11, 1897, he had bought hoops for the defendant in the capacity of agent, and that the $8,000 was accounted for by losses through fire, theft, etc. Prior to the replevin of the hoops, and subsequent to February 11th, the plaintiff had drawn six drafts upon the hoop company. Four of these drafts were accepted by the hoop company, but were not paid by it when they matured. There was testimony tending to show that the defendant was hopelessly insolvent.

It is claimed that the court erred in refusing to direct a verdict for the defendants, inasmuch as it appeared that the plaintiff had not tendered back the unpaid drafts at the time of rescinding the contract. It was shown that the drafts were worthless, and that the plaintiff had at least three, if not all, of the four accepted drafts with him at the time of the trial, and that none of them had been paid, except what he paid. These were filed with the court before judgment, one only — for $87 — of the accepted drafts not being produced and filed. This was some days after the trial. There were five car loads of the hoops which plaintiff did not succeed in replevying. The letter quoted shows the nature of the contract, and that the parties acted under it is undisputed. Several lots of hoops were shipped, and several drafts were drawn. The plain intent of the letter was that settlements should follow shipments, upon which money previously advanced should apply.

Therefore, if we were able to ascertain the dates of shipment of the lots replevied, we might be able to determine whether the $87 draft should or should not be treated as a payment upon such shipment.    If not, we should think it unnecessary to show that such draft had been tendered or produced, because not a part of the consideration for the hoops replevied.    But if, on the contrary, it was to be applied upon such shipment, and at the time of the trial was in the hands of a *bona fide* holder for value, the plaintiff would fail for not putting the defendant *in statu quo*.    The acceptance would then be an outstanding obligation, against which the defendant would have no defense.    But if, like the others, it was in the hands of, and owned by, the plaintiff, its production upon the trial and deposit with the court would protect the defendant, and it would be governed by the same rule as though it were a promissory note.    In the case of *Nichols* v. *Michael*, 23 N. Y. 273 (80 Am. Dec. 259), it was held that restoration of such a note was unnecessary, because, the moment the contract was rescinded, the note in the hands of the plaintiff became invalid and worthless.    It was held in such case that the surrender of the note to the court upon the trial would be sufficient.

Several cases of our own seem to recognize the rule of the New York case.    *Dayton* v. *Monroe*, 47 Mich. 193, was the case of a note, though the action differed in its nature.    The case of *Waterbury* v. *Andrews*, 67 Mich. 287, holds that a void note need not be restored.    In *Stubly* v. *Beachboard*, 68 Mich. 414, it was held that the note of a third person need not be surrendered before suit; and in *Pangborn* v. *Ruemenapp*, 74 Mich. 572, a tender of a worthless note upon the trial was held sufficient. While we think that such surrender might be necessary, either at the time of rescission, or, at all events, upon the trial, in the case of negotiable paper of the defendant, not due, it would seem to be unnecessary where it was overdue, provided it should be made to appear that it was still held and owned by the payee, and not by a *bona fide* pur-

chaser for value.  *Sisson* v. *Hill*, 18 R. I. 212 (21 L. R. A.
206).   We are unable to tell, from this record, whether the
plaintiff had all of the accepted drafts or not.   He says in
his testimony that he had these drafts in his pocket at the
trial, but the brief of his counsel indicates that one had
been negotiated, and was still outstanding.   The case
need not turn upon this point, however.

The judge charged the jury that:

"If, after ordering the goods, and while they were in
transit, the defendant hoop company conceived the inten-
tion of not paying for the property, and took the property
at Detroit with the design to transfer it to other creditors,
and not pay the plaintiff for the goods, and that intention
continued up to the time of the seizure of the goods by
the plaintiff on his writ, the plaintiff would be entitled to
rescind the sale and recover the property."

We are of the opinion that this extends the rule.   The
delivery was complete when the hoops were put in the
hands of the carrier, and the title then passed to the de-
fendant, and would not be devested by a subsequent
change of purpose.   This question has been recently de-
cided in Iowa in the case of *Starr* v. *Stevenson*, 91 Iowa,
684.   It is there pointed out that the supposed analogy be-
tween "rescission" and "stoppage *in transitu*" does not
exist.

We are also of the opinion that the court should not
have said that:

"If, at the time of making the contract, the buyers
asserted themselves to be solvent, and were in fact insol-
vent,   *   *   *   the intention not to pay will be presumed
from their condition; and a purchaser's knowledge that
he will not be able to pay for goods bought on credit is
equivalent to an intention not to pay."

The letter should not have been construed to contain a
representation of solvency.

The court also instructed the jury that:

"Where a buyer is insolvent at the time of making the
contract of sale, or is in failing circumstances, and con-
ceived the intention of not paying for the goods, or had no

reasonable expectation that he could do so, and fraudulently concealed or misrepresented the facts, the sale may be rescinded by the seller, and the property recovered."

We think there was no error in this.  *Belding* v. *Frankland*, 41 Am. Rep. 633 (76 Tenn. 67), note; *Davis* v. *Stewart*, 8 Fed. 803.

In *Le Grand* v. *Bank*, 81 Ala. 123 (60 Am. Rep. 140), the rule is laid down that, to authorize disaffirmance of a sale, the concurrence of three facts must be shown:

1. The purchaser must have been insolvent, or in failing circumstances.

2. He must have had at the time a preconceived intention not to pay for the goods, or no reasonable expectation of being able to do so.

3. There must have been on his part an intentional concealment of these facts, or a fraudulent representation in reference to them.

Without saying that a man must always be insolvent, or in failing circumstances, to authorize rescission, we think the charge complained of was in accord with the rule there laid down, which was applicable to the facts in this case.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.