## WILLIAM OPENHYM & SONS v. BLAKE.

(Circuit Court of Appeals, Eighth Circuit. November 9, 1907.)

No. 2,467.

**1. SALES—RIGHT OF SELLER TO RESCIND—FRAUD.**

Written statements made by a mercantile corporation to induce a sale to it of goods on credit, which showed assets above liabilities of the value of $63,000, whereas, within five weeks thereafter, the directors, without noticeable business losses having been sustained, admitted insolvency and submitted to an adjudication of bankruptcy, and which also omitted specific items of indebtedness for large amounts, constituted such false and fraudulent representations as entitled the seller of the goods to rescind the sale for fraud.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 94, 95.]

**2. CANCELLATION OF INSTRUMENTS—EFFECT OF BANKRUPTCY OF PURCHASER.**

The right of a seller of goods to rescind the sale for fraud is not affected by the institution of bankruptcy proceedings against the purchaser, where such right is seasonably exercised.

**3. BANKRUPTCY—SELLER OF GOODS TO BANKRUPT—RIGHT TO RECLAIM PROCEEDS ON RESCISSION FOR FRAUD.**

Petitioners sold goods to a corporation on credit, the sale being induced by false and fraudulent representations. Within a few days after the delivery of the goods, a receiver was appointed for the corporation by a state court who took possession of its property. A petition in bankruptcy was also filed against it, but before any action had been taken upon it petitioners notified the state receiver in possession that they had rescinded the sale and demanded the goods. Being refused, they commenced an action of replevin therefor with the consent of the state court, the goods were segregated, and the receivers gave a redelivery bond therefor. The corporation was adjudged a bankrupt, and a receiver appointed, who was directed to apply to the state court for possession of the property subject to the payment of such liabilities as the state court should fix as having been incurred by its receiver for the benefit of the estate. In making the order for delivery of the property, the state court recited the giving of the redelivery bond in replevin, and required the receiver in bankruptcy to assume the obligation thereof. The court of bankruptcy subsequently enjoined the further prosecution of the replevin suit, and petitioners presented their claim to that court for allowance as a preferred claim. *Held,* that they were entitled to such allowance; the replevin action, while it could not have been prosecuted to the extent of depriving the bankruptcy court of the property, being an act of rescission which also served to identify the goods and ascertain their value.

**4. SAME.**

The fact that petitioners did not present their claim until a partial dividend had been paid did not affect their rights, where their delay was not great, and sufficient remained to pay the claim, and it did not appear that other creditors were prejudiced thereby.

Appeal from the District Court of the United States for the Western District of Missouri.

This is an appeal by William Openhym & Sons from an order denying allowance of a claim, as preferred, against the estate of the Walkeen-Lewis Millinery Company, bankrupt. Appellants were importers and manufacturers of silks and ribbons at New York City. The millinery company was engaged in the wholesale millinery business at Kansas City, Missouri. In July, 1905, the millinery company, which had previously been a customer of appellants and had paid its bills, sought to purchase additional goods. The company had

forwarded a statement dated July 7, 1905, showing in some detail its assets and liabilities. The statement was not satisfactory to appellants, and, in response to a request for a more specific showing of financial condition, the president of the millinery company, who was then in New York to make purchases, made out and delivered a statement dated July 13, 1905. Both statements showed the net worth of the company to be $63,161.65 above all liabilities. Certain oral representations were also made. Appellants thereupon sold and shipped to the millinery company goods amounting to $3,125.74. The goods arrived in Kansas City the latter part of July. On August 12th a state court in that city appointed a receiver, who forthwith took possession of the property of the millinery company, and under the orders of that court continued the sale thereof through traveling men and otherwise until the 25th of September. On August 15th certain creditors of the millinery company filed a petition to have it adjudged bankrupt. August 19th the directors of the company met and adopted a resolution admitting its insolvency and inability to pay its debts and expressing a desire that it be adjudged a bankrupt. August 21st the appellants, who had learned of the filing of the petition in bankruptcy, asserted that the statements and oral representations made them were false in material particulars, that they had sold the goods relying upon their truthfulness, and they notified the state court receiver that they rescinded the sale. Their demand of him for possession was refused. On the same day they obtained from the state court permission to sue in replevin for the possession of the goods, and they did so. In the execution of the writ but $2,582.80 worth of the goods were found. The sheriff segregated them from the remainder of the stock then in the possession of the state court receiver, and took them into his possession. The receiver thereupon gave a redelivery bond, resumed possession of the goods, and continued the sale thereof with the remainder of the stock. September 23d the millinery company was adjudged bankrupt by the District Court of the United States for the Western district of Missouri. On the same day that court appointed Daniel F. Blake receiver in bankruptcy, and directed him to apply to the state court for an order upon its receiver for the possession of the property, and that before taking possession he should request that court to fix and determine the liabilities which its own receiver had incurred for the benefit of the estate. The order of direction to the receiver in bankruptcy contained this clause: "The liabilities incurred by the said receiver appointed by said state court which are fixed and allowed by said state court shall be assumed and paid by the receiver appointed herein." September 25th the state court ascertained and stated various liabilities incurred by its receiver, giving the names of the parties to whom owing and the amounts, and, in addition thereto, recited the proceedings in the replevin action brought by the appellants, that its receiver had executed a redelivery bond, and had retained the property involved, and found that whatever liability was incurred under the redelivery bond was incurred for the benefit of the estate. It thereupon ordered the surrender of all of the assets of the estate to the receiver in bankruptcy, with a provision that the latter should assume and pay the liabilities recited and also all liability arising under the redelivery bond. The property was delivered to the receiver in bankruptcy under those conditions. October 2d the receiver in bankruptcy sold all of the property of the estate, including that turned over to him as above mentioned. October 13th Blake, the receiver, was selected as trustee. October 27th the court below ruled appellants to show cause November 2d why they should not be enjoined from prosecuting their replevin action in the state court, and temporarily enjoined them from continuing such prosecution. December 1st the temporary injunction was made permanent. December 10th a dividend upon claims allowed was declared, but its payment left the greater portion of the estate in the hands of the trustee. December 21st appellants presented their intervening petition to the court below for the allowance of their claim as a preferred one. They also asked for the allowance, as a general claim, of the value of the goods which had been sold by the millinery company and had not been found by the sheriff; but the action of the court upon this matter is not in controversy here. The court below denied the allowance of the claim for $2,582.80 as a preferred one. Hence this appeal.

I. J. Ringolsky (Morris J. Hirsch, on the brief), for appellants.

Samuel Feller (J. V. C. Karnes, Alexander New, and Edwin A. Krauthoff, on the brief), for appellee.

Before SANBORN and HOOK, Circuit Judges.

HOOK, Circuit Judge (after stating the facts as above). It is clear that the bankrupt induced the appellants to sell and part with the possession of their goods by false and fraudulent representations. The appellants, though diligent in seeking information as to the bankrupt's financial standing, were deceived. The first statement submitted by the bankrupt was pronounced unsatisfactory. A second one, more in detail, was furnished, and it was supplemented by oral representations. The statement of July 13th of a surplus of $63,-161.65 is irreconcilable with the confession of insolvency on August 19th, there being no noticeable business losses in the interim. A specific instance of deception was the intentional suppression of information of outstanding notes for borrowed money aggregating $14,-000. The excuse afterwards offered that the holders of the notes intended to take that amount of additional stock in the company is insufficient. As the case stood, the notes constituted indebtedness, and the appellants were entitled to know the facts. The notes were afterwards allowed as demands against the bankrupt's estate. Another specific instance was the intentional suppression of the fact that the bankrupt owed $5,000 on past due accounts. There were sufficient grounds for rescission. Turner v. Ward, 154 U. S. 618, 14 Sup. Ct. 1179, 23 L. Ed. 391. Upon learning of the fraud practiced upon them, the appellants promptly rescinded the sale. The bankrupt's entire stock of goods was then in the possession of a receiver appointed by a state court. He was engaged in selling it. Certain creditors of the bankrupt had six days previously filed a petition in bankruptcy, but no injunction against the continued sales was obtained, no receiver in bankruptcy was appointed, and no adjudication was had until a month afterwards. The rescission was properly effected by the assertion of appellants' purpose, the demand of the state court receiver for possession, and the replevin action begun with the permission of the state court. The right of rescission was not affected by the pendency of the bankruptcy proceedings. In Donaldson v. Farwell, 93 U. S. 631, 23 L. Ed. 993, the following instruction was approved:

"If the bankrupt retained the property at the time of the filing of the petition in bankruptcy, the title passed to the assignee, and, as we think, the weight of authority is it passed as a defeasible and not as an absolute title, with the right still on the part of the vendors to reclaim the property, provided it was done within a reasonable time after the sale, and after knowledge of the fraud which had been perpetrated."

The rights of the assignee in bankruptcy were as defined by the act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517), but they were no greater than the rights of the trustee under the present act.

It is contended that appellants' replevin action in the state court, begun after the commencement of bankruptcy proceedings, made for nothing. In other words, it is said the state court had no jurisdiction to entertain such an action. In Skilton v. Codington, 185 N. Y. 80,

77 N. E. 790, 113 Am. St. Rep. 885, it was held that, where a trustee in bankruptcy sold personal property which was covered by a chattel mortgage and reserved from the proceeds an amount sufficient to pay liens that might be established against the property, the holder of the chattel mortgage was entitled to sue the trustee in a state court to establish his claim. The doctrine of that case was approved by the Supreme Court in Frank v. Vollkommer, Trustee, 205 U. S. 521, 27 Sup. Ct. 596, 51 L. Ed. 911, which was a suit by the trustee in a state court to set aside as fraudulent a chattel mortgage given by the bankrupt. But neither of these cases goes so far as to hold that while proceedings in bankruptcy are pending an action may be maintained in a state court to deprive the bankruptcy court of the physical possession of property or funds. On the contrary, it was said in Skilton v. Codington:

"Of course, we do not mean to assert that, under the judgment of the state court, a fund or property could be taken from the possession of the bankruptcy court. The contrary is the law. It may also be that the bankrupt court could have enjoined the prosecution of this action, but it has not done so. Apparently it has permitted the plaintiff to assert his claim by a plenary suit in a court of general jurisdiction, and we may assume that the bankrupt court will give effect to any judgment recovered therein."

Though the replevin action may not have been maintained to the extent of depriving the bankruptcy court of its right to possession whenever asserted, it served the appellants in two ways—it was an act of rescission indicative of their purpose, and it resulted in the definite ascertainment of the identity of such of their goods as were then in the hands of the state court. While the bankruptcy court refrained from taking possession of the goods, the appellants should not suffer. The goods were in the custody of the law, and the acts of the state court and its receiver were presumably for the benefit of the estate. Such of appellants' goods as went into the possession of the state court were clearly identified, and their value established. The same goods or their proceeds in the form of customers' accounts finally went into the possession of the bankruptcy court. Under these circumstances, it was not incumbent on appellants to show what portion of those identified had been sold by the state court receiver and what portion was turned over to the receiver in bankruptcy. The order of the bankruptcy court of September 23d directing its receiver to apply to the state court for possession recognized the virtue of the prior proceedings by requiring him to assume and pay the liabilities of the state court receiver, among which was the liability upon the redelivery bond given in the replevin action. This order was made by a judge of another district temporarily officiating in the Western district of Missouri, and it does not appear to have been called to the attention of the judge who made the final order from which this appeal was taken. We do not think appellants should be denied relief because they delayed intervening in the bankruptcy court until after a partial dividend was declared. The fraud was practiced on appellants and the goods obtained July 13th, the sale was rescinded August 21st, and the intervening petition was filed in the bankruptcy court December 21st. At all times after the rescission of the sale the purpose of

appellants to rely thereon was manifest. They were fairly diligent in the assertion of their rights, and no one seems to have been prejudiced by the short delay that occurred. That the filing of the intervening petition was delayed until after the dividend injured no one. The trustee and the court were aware that appellants had rescinded the sale, and the dividend took but a part of the funds on hand. There remained more than enough to pay the appellants, and had the intervening petition been presented and allowed much earlier the same dividend would probably have been declared. At least no reason appears why it should not have been.

The order appealed from is reversed, with direction to allow appellants' claim as prayed for.