## SCHROTH v. MONARCH FENCE CO.

(Circuit Court of Appeals, Sixth Circuit. February 11, 1916.)

### No. 2698.

1. SALES ☞45—RESCISSION FOR FRAUD—PURCHASE WITHOUT EXPECTATION OF PAYMENT.

On May 29th, when a milling company ordered goods from the claimant to be paid for January 1st following, the milling company was doing a large business. It for a long time had been insolvent, but it had excellent credit at a bank which was its principal creditor, and until August 18th continued to do business, making regular payments of indebtedness. In August the bank failed, forcing the milling company to close its mill. There was nothing to show that the milling company had any reason to anticipate the failure of the bank. *Held*, that the facts did not show that the goods were purchased without any reasonable expectation of being able to pay for them, so as to entitle the claimant to reclaim the goods, though the relation of the milling company to the bank was abnormal on the part of the bank, and though, the milling company's manager having disappeared, there was no direct testimony on behalf of that company that it had a reasonable expectation of being able to pay.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 94; Dec. Dig. ☞45.]

2. BANKRUPTCY ☞303—RECLAMATION PROCEEDINGS—BURDEN OF PROOF.

One seeking to reclaim goods from a trustee in bankruptcy, on the ground that they were purchased on credit by the bankrupt while insolvent, without reasonable expectation of being able to pay for them, has the burden of showing the fraud alleged.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 458–462; Dec. Dig. ☞303.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. BANKRUPTCY ⬤⟹140—SALES—RESCISSION FOR FRAUD—PURCHASE ON CRED-
IT BY INSOLVENT.

Under the rule pertaining in Ohio, or that prevailing in Michigan, a
seller of goods on credit cannot, in the absence of fraud, reclaim them
from the buyer's trustee in bankruptcy, though the buyer was insolvent
at the time of the purchase and the seller was ignorant thereof.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219,
225; Dec. Dig. ⬤⟹140.]

4. BANKRUPTCY ⬤⟹140—RECLAMATION OF GOODS SOLD ON CREDIT.

The claimant sold goods to a milling company on credit at a time when
it was insolvent, but was continuing to do business because of a large
credit extended to it by a bank. Held that, in the absence of any purpose
on the bank's part to defraud or prejudice those dealing with the milling
company, the fact that the bank was the milling company's principal cred-
itor created no equity in claimant's favor, entitling it to reclaim the
goods so sold from the milling company's trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219,
225; Dec. Dig. ⬤⟹140.]

Appeal from the District Court of the United States for the West-
ern Division of the Northern District of Ohio; John M. Killits,
Judge.

Proceeding by the Monarch Fence Company against George E.
Schroth, trustee in bankruptcy of the Sycamore Grain & Milling Com-
pany. From an order reversing a decision of the referee and allow-
ing the reclamation of certain property, the trustee appeals. Reversed
and remanded, with directions.

George E. Schroth, of Tiffin, Ohio, and David C. Parker and Car-
ter, Carter & Carter, all of Upper Sandusky, Ohio, for appellant.

R. V. Sears, of Bucyrus, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit
Judges.

KNAPPEN, Circuit Judge. Appeal from an order allowing recla-
mation of certain property sold by appellee to the bankrupt, on the
ground that the purchase was fraudulent, in that the purchaser was
insolvent and had no reasonable expectation of being able to make pay-
ment when due. The referee was of opinion that the claim of fraud-
ulent purchase was not made out, and denied the right to reclaim.
The District Judge took the opposite view, and so reversed the ref-
eree.

[1] The case turns upon a determination of the question of fraud-
ulent intent in the purchase, which question is purely one of fact.
The goods were ordered May 29, 1913, were delivered July 2, 1913,
and were to be paid for January 1, 1914. At the time of purchase and
delivery the milling company was doing a large and active business.
It was insolvent in fact, and had been in that condition for a long time
prior thereto. It had, however, excellent credit at the bank, which was
its principal creditor. By the bank's failure, which occurred about the
middle of August, 1913, the milling company's affairs came to an ab-
rupt crisis, resulting in the immediate closing of the mill on August
18th, the appointment of a receiver at about that time, and involun-

tary bankruptcy proceedings on September 6th. That the milling company did not anticipate failure in at least the near future is evidenced by the fact that between May 29th and August 18th it continued to do business in the regular course; its receipts and disbursements during that period being each about $60,000. It made regular payments of indebtedness, including $500 paid appellee June 29th upon a previous bill. Had the bank not failed, the milling company's credit would have continued apparently indefinitely, and it ceased business only because of the bank's failure, which the evidence does not indicate the milling company had any reason to anticipate. These facts, on their face, are inconsistent, in our opinion, with a lack of reasonable expectation on the part of the milling company of being able to pay the bill in question when due. Such conduct was not the natural course of a debtor realizing that it stood on the brink of failure. As was suggested by the referee, if the evidence presented is sufficient to show that the property in question was bought without intent to pay for it, the evidence would as clearly show that a purchase made a year earlier was likewise fraudulent and without intent to pay, although it appears that such purchases were all paid for.

In reaching his conclusion the District Judge was impressed by the view that the milling company could not reasonably have expected that the existing abnormal relation between it and the bank would continue until the bill in question matured, and so must have anticipated its own early collapse, and by the fact that no one on the milling company's behalf testified directly to a reasonable expectation of being able to pay. The disappearance of the milling company's manager at the time of its failure made such direct testimony apparently impossible. While the considerations which controlled the mind of the judge have weight, and while the bank's action in carrying the milling company's indebtedness, not only in an excessive amount, but, as it did, largely by way of overdrafts, shows an abnormal condition, yet these facts do not, in our opinion, outweigh the evidence leading to the conclusion reached by the referee. The circumstances are in many respects similar to those which we considered in Kimmerle v. Farr, 189 Fed. 295, 111 C. C. A. 27 (involving alleged preferential payment), and the rules there applied are pertinent here.

[2, 3] It scarcely need be said that the appellee has the burden of showing the fraud alleged, and that in its absence the goods in question cannot be reclaimed from the trustee in bankruptcy, notwithstanding the buyer's insolvency and the seller's ignorance of it, whether the transaction is judged by the rule pertaining in Ohio or by that prevailing in Michigan. Talcott v. Henderson, 31 Ohio St. 162, 27 Am. Rep. 501; Skinner v. Michigan Hoop Co., 119 Mich. 467, 472, 78 N. W. 547, 75 Am. St. Rep. 413. A careful consideration of the record fails to convince us that the milling company was without reasonable expectation of paying for the bill in question.

[4] The fact that the bank is the principal creditor of the milling company does not impress us as creating an equity in appellee's favor. While the large credit extended to the milling company was unbusinesslike, the record does not even tend to show a purpose on

the bank's part to defraud or prejudice those who should sell to the milling company.

In our opinion the order of the District Court should be reversed, with costs, and the cause remanded, with directions to dismiss the petition for reclamation.