## In re OUTDOOR CLOTHING CO., Inc.

District Court, S. D. New York.

Jan. 12, 1935.

Schottland, Daly & Scheidlinger, of New York City (Joseph Schottland, of New York City, of counsel), for debtor.

Benjamin Siegel, of New York City (Edward I. Kaplan, of New York City, of counsel), for creditor.

GODDARD, District Judge.

This is a motion to disaffirm and overrule the report of the special master, who denied a petition of J. Greenebaum Tanning Company for reclamation of certain leather goods sold and delivered to the Outdoor Clothing Co., Inc., the bankrupt.

On June 8, 1934, the Outdoor Clothing Co., Inc., assigned for the benefit of creditors. On June 14 it filed a petition for reorganization under section 77B of the Bankruptcy Act (11 USCA § 207). Pending the disposition of the 77B petition, the J. Greenebaum Tanning Company, which had sold and delivered to the Outdoor Clothing Co., Inc., a few weeks before the bankruptcy, horse hides at the contracted price of $5,100.30, brought proceedings to reclaim the hides on the ground that the sale was induced by a false financial statement and by subsequent misrepresentations on the part of the Outdoor Clothing Co., Inc. By consent the hides were returned to the claimant creditor to await the court's determination as to ownership. The debtor has effected a reorganization by payment of 30

per cent. to its creditors. If the debtor prevails, it will obtain the hides by the payment of one-third of the contract price.

In the petition for reclamation it is charged that the creditor sold to the debtor certain merchandise on March 22, 1934, relying on the debtor's financial statement issued to the creditor on June 21, 1933, and dated as of February 28, 1933, and it alleges that the financial statement was materially false and known by the debtor to be false, and that on the date when the purchase was made, March 22, 1934, the bankrupt represented to the creditor that it had a net worth of over $58,000 and that its financial condition was better than shown in the financial statement; also that it had never pledged or sold any of its accounts receivable.

■ The special master has found "that none of the representations (of March 22, 1934) alleged to have been made to Simon, the creditor's representative, by Bromberg (President of the bankrupt) were ever made." Although I am inclined to disagree with the special master in this finding, I shall accept it as he has seen the witnesses, but it seems to me that Bromberg's own misrepresentations are quite sufficient to destroy confidence in his testimony, and I find nothing in the record to cast doubt on Simon's veracity. Moreover, Simon's version appears to be a probable one. The falseness of the debtor's financial statement, the reliance placed upon it by the creditor, and the effect of it are not referred to in the special master's report, and these are important elements in the case. If the debtor obtained this merchandise upon credit which was based upon a materially false statement in writing made by the debtor for the purpose of obtaining credit, and the statement was of continuing effect and in force and binding upon the bankrupt at the time of this sale, and the creditor, relying upon that statement or in part upon it, extended the credit, he is entitled to get his merchandise back. Gerdes v. Lustgarten, 266 U. S. 321, 45 S. Ct. 107, 69 L. Ed. 309; Elbro Knitting Mills v. Schwartz (C. C. A.) 30 F.(2d) 10; In re Appelbaum, 11 F.(2d) 685 (C. C. A. 2).

■ The financial statement as of February 28, 1933, was issued to the creditor on June 21, 1933, the debtor continuing to have business relations with the creditor up to and until after March 22, 1934, the time of the sale of the merchandise now sought to be reclaimed. This statement contained a number of questions and answers upon matters in which the creditor was interested, and upon which it based its conclusion as to credit to be extended to the debtor. It included the following:

"Have you transferred, cashed, pledged, or borrowed any money upon any of your accounts or bills receivable at any time up to the date of signing this statement? * * * (Yes or No) No."

The fact is that between April 25, 1933, and June 8, 1934, the debtor had been assigning accounts receivable to the Merchants' Factors, Inc.; that on March 22, 1934, the collateral balance in the possession of the Merchants' Factors, Inc., was $25,256.23, and the balance owing by the debtor to the Merchants' Factors, Inc., was $15,411.75. It also appears that on June 21, 1933, the date when the statement was issued to the creditor, there was due to the Merchants' Factors, Inc., $7,107.09. The financial statement also contained the following:

"This statement is considered as reiterated and applicable to each purchase until revoked in writing, and it is understood that in the event that we (or I) borrow any money hereafter by pledging our (or my) outstanding accounts or any part of them, we (or I) must notify at once."

At no time did the debtor notify the creditor that it had pledged any of its accounts receivable as required by the terms of the financial statement. This was a continuing financial statement applicable to the credit extended at the time of the sale in question on March 22, 1934. Gerdes v. Lustgarten, supra.

The seller's credit man testified that in extending the credit he relied entirely upon the financial statement. The liabilities column also contained the following:

"Capital stock issued, $57,000.

"Surplus, $583.05."

"Note: The reduction in the amount of capital stock issued and outstanding is the result of the transfer of the Pants Dept. to Samuel Bromberg."

There is no evidence that the debtor ever had a "Pants Dept." Nor is there any evidence that there was such a transfer or such a reduction. The minute book of the debtor corporation contained the following entry on July 19, 1934:

"Present: Mr. Sam Bromberg, owner and holder of 1220 shares of stock of said

corporation being all of the outstanding and issued stock thereof."

It is difficult to reconcile this with the statement that the stock had been reduced $57,000. Concededly Bromberg had no funds with which to purchase it.

A certified public accountant who examined the bankrupt's books testified that on February 28, 1932, they showed the capital stock account as $122,000, and a surplus of $16,113.81, making a total of $138,113.81; that one year later the books reflected a loss in operation of over $81,000, and the contention of the creditor that this was a fictitious transaction included in the financial statement for the purpose of concealing part of the $81,000 loss which the debtor had sustained seems to be well founded. These were materially false statements. In re Kerner, 250 F. 993 (C. C. A. 2); In re Toba Lessler, 74 F.(2d) 249, opinion of the Circuit Court of Appeals of this circuit of December 10, 1934. I think the testimony is convincing and the conclusion reasonable that these are "matters which, if disclosed, would have caused the party who was to act upon the statement to withhold the credit which he extended."

Another item included as an asset in the financial statement which perhaps alone is not sufficient to justify reclamation, further indicating the character of the statement and of Bromberg, is the sum of $19,722.30 due from Samuel Bromberg. Yet he admitted on cross-examination that at the time it was included as an asset it was worthless, as he had no property, and it also appears that Bromberg made no mention of this claim against him in the bankruptcy schedules which he prepared, and when asked about it later, stated that he did not because "I considered it absolutely worthless."

It seems to me clear that this was a continuing financial statement intended to be relied upon by the creditor in extending the credit on March 22, 1934, and that it contained materially false statements which were relied upon by the creditor, and that he is entitled to the return of his merchandise. The force and effect of the written financial statement is not changed by the fact that the special master finds that the alleged conversation of March 22, 1934, did not take place—it merely leaves the situation as it stood.

Accordingly, I think that the report of the special master should not be confirmed, and that the petition for reclamation should be granted. Settle order on notice.